CITY OF BOSTON *vs.* JOSEPH SANTOSUOSSO & another.

Suffolk.     May 11, 1937. — September 16, 1937.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Trust,* What constitutes, Constructive. *Equity Jurisdiction,* To enforce trust, Remedy at law. *Fiduciary. Municipal Corporations,* Officers and agents. *Judgment. Res Judicata. Words,* "Fiduciary relationship."

If the mayor of a city and one conspiring with him received part of a sum which the mayor in pursuance of the conspiracy procured to be paid by the city in settlement of an unfounded claim against it, they thereby became trustees for the city of the money received.

A suit in equity lay to enforce a constructive trust in money, notwithstanding that the plaintiff also might have had a remedy at law by action for money had and received.

A judgment against a city and payment thereof on execution, if procured
by the mayor of the city pursuant to a conspiracy whereby he and
another personally were to receive part of the money so paid, did not
render *res judicata* a later claim by the city that the mayor and his
coconspirator were trustees for it of the money received by them.

BILL IN EQUITY, filed in the Superior Court on January
21, 1937.

The suit was reported by *Williams*, J.

*W. P. Murray*, for the defendant Curley.

*F. L. Simpson*, for the defendant Santosuosso.

*E. F. McClennen*, Special Assistant Corporation Counsel,
(*H. E. Foley*, Corporation Counsel, with him,) for the plaintiff.

PIERCE, J.    After the defendants' demurrers were overruled and the pleas were adjudged insufficient by interlocutory decrees in the Superior Court, the sitting judge, at the request of all parties, reported the questions raised by the said demurrers and pleas to this court. The bill of complaint, demurrers, pleas and the decrees thereon are incorporated in this report.

The facts alleged in the bill of complaint, which are admitted for the purposes of the demurrers, are in substance as follows:  The defendant James M. Curley was the duly elected and qualified mayor of the city of Boston from January, 1930, until January, 1934.  While such mayor, in November, 1933, he entered into an unlawful agreement with the defendant Joseph Santosuosso and a representative of Ernest W. Brown, Inc., to the effect that, by reason of his power and influence as mayor of the city of Boston, he would bring it about that certain claims then in litigation between the said Ernest W. Brown, Inc., and the city of Boston be settled by the payment by the city of the sum of $85,000 to Santosuosso, with the agreement between said three that a large part of the proceeds so received would be paid over by Santosuosso to Curley for his own use.  About the end of November, 1933, said three parties put into effect, carried out and completed this scheme.  The money ($30,000 or $40,000) was paid over and received by Curley, and thereby "the respondents became in their own

wrong and remain trustees for the city of Boston of approximately $50,000."

In more particular detail the bill of complaint discloses that in January, 1932, Ernest W. Brown, Inc., brought two actions in the Superior Court for Suffolk County against the city of Boston, in the name of General Equipment Corporation, for damages to certain premises on Commonwealth Avenue in said city; that these actions were tried together in June, 1933, before a judge and jury, and a verdict was found therein, subject to leave reserved, for the General Equipment Corporation; that pursuant to leave reserved, the judge set aside the verdict and entered a verdict for the city on or about June 24, 1933, "on the ground that there was no liability on the part of the city"; that the defendant Santosuosso was counsel for Ernest W. Brown, Inc., in said proceedings; that "There was in fact no liability on the part of the city of Boston for the damages sought in said two proceedings and the said Ernest W. Brown, Inc., was ready to settle said proceedings against the city for $20,000, if paid by the city and their representative had so informed Joseph Santosuosso"; that "After the agreement upon the scheme aforesaid of the respondents and said representative of Ernest W. Brown, Inc., and for the purpose of receiving to himself the money aforesaid the respondent James M. Curley as mayor approved and brought about the settlement of said suits by causing to be paid to said Joseph Santosuosso from the moneys of the city of Boston the sum of $85,000 and said Santosuosso, in pursuance of said scheme, received said $85,000 and with the assistance of said representative of Ernest W. Brown, Inc., received and retained the sum of $50,000 of which he gave to said James M. Curley a large part, approximately $30,000, with the knowledge and approval of said representative of . . . Ernest W. Brown, Inc."; that "the said Santosuosso out of said $85,000 gave or caused to be given to said Ernest W. Brown, Inc., the sum of $20,000 and to the said representative of Ernest W. Brown, Inc., the sum of $15,000 for compensation"; that "the said Joseph Santosuosso also gave to said representative the further sum of

$1,000 "; that both Santosuosso and Curley "knew at the time of the receipt of said approximately $50,000 out of the $85,000 remaining after the payment of said $20,000 to . . . Ernest W. Brown, Inc., and said $15,000 to its representative, that said $50,000 was the money of and still in equity and good conscience belonged to the city of Boston and that they . . . had no right to receive as their own said $50,000 or any part thereof and that they were receiving it and held it and continued to hold it in trust for the city of Boston and that it had come into their hands upon said trust wholly by reason of the influence of said James M. Curley as mayor of the city of Boston exercised by him in pursuance of said scheme in violation of the trust which he owed to said city as the mayor thereof "; that Santosuosso and Curley "received said $50,000 without any consideration therefor and this fact was well known at the time to both of them." The bill of complaint states that the "complainant is ignorant whether said $50,000 in money of the city of Boston received by the respondents is still held by them in the form in which it was received or whether it has been converted into other proceeds now held by them as trustees upon the trust upon which the money was originally received as aforesaid."

The defendant Santosuosso demurred to the bill on the grounds that no trust was set out in the bill, that there was no jurisdiction in equity, and that the plaintiff had a plain, complete and adequate remedy at law. In his plea he sets forth that the actions against the city in the name of General Equipment Corporation were for the same cause of action; that they were tried together; that a verdict was rendered for the General Equipment Corporation by a jury in the sum of $129,646.57, with interest thereon; that thereafter a judgment was entered in the Superior Court in one of said actions in the amount of $85,000 and a judgment of "neither party" in the other action; that an execution was issued upon the aforesaid judgment against the city of Boston, and the sum of $85,000 was paid by the city in satisfaction of said judgment; that execution was returned satisfied; that said judgment is now, and since the entry

thereof has been, binding upon the city of Boston; that the city of Boston is not entitled at law or in equity to attack the validity of said judgment or of the cause of action for which it was rendered; that the $85,000 paid by the city in satisfaction of the judgment, as appears by the docket record of the Superior Court for the county of Suffolk, became the property of the General Equipment Corporation; and that the city has never had, and does not now have, any right, interest or title to the whole or any part of said sum.

The defendant Curley demurred, "1. Because said bill of complaint set forth no cause for equitable relief"; "2. Because it is not alleged in said bill of complaint that there is any trust *res*, fund, or estate, or anything else which is definite and specific upon which a trust may be predicated"; "3. Because there is no positive allegation in said bill of complaint contained that there is a trust *res*, fund, or estate upon which a trust may be predicated"; and "4. Because the plaintiff has a plain, adequate and complete remedy at law in the situation appearing in said bill of complaint."

The plea of the defendant Curley, reserving leave to file an answer to the bill of complaint, sets forth "that one of the proceedings described in said bill as being the subject matter of suits of the General Equipment Corporation against the plaintiff herein, the city of Boston, was an action at law numbered 274,314 upon the docket of the Superior Court in the county of Suffolk, and that on or about the twenty-seventh day of November, 1933, a judgment was entered in said action at law for the plaintiff therein in the sum of $85,000 damages, without costs"; that "said judgment is conclusively binding and in full force, and that the present plaintiff herein . . . is bound by said judgment and that the liability of the said city of Boston in said proceeding is established by said judgment and cannot be attacked or assailed in this proceeding"; "that all sums of money alleged to have been paid by the plaintiff herein were paid in satisfaction and discharge of said judgment and that the execution was returned to court fully satisfied

on December 7, 1933"; "that all said sums of money so paid by the city of Boston became and were the property of said judgment creditor, the General Equipment Corporation, and that the city of Boston had no interest therein in law or in equity, and no interest in the disposition of said moneys or any part thereof, and that the same did not constitute a trust fund or anything in which the city of Boston had any property interest, and is not entitled in equity to impress the same, or any portion thereof, with any lien, claim or trust in this proceeding." The prayer is that "the bill of complaint may be dismissed."

The city of Boston, in its brief, points out that the bill of complaint does not seek an equitable remedy for the protection of a legal right, but, as the beneficiary of a trust, seeks to have the trustees who received the legal title to the *res* of the trust (a fund of $50,000) perform the trust.

The right of the city of Boston as a *cestui que trust* is pre-eminently an equitable right, and it arose as soon as the agreement was made and the fund was received by its mayor. When the fund was received under the agreement by the mayor the defendants held the legal title in trust to pay it over to the city of Boston. The trust obligation was not performed by holding the fund, dissipating the fund or converting the fund into a substituted *res*. The right of the plaintiff is a pure equitable right, and it is immaterial that it may have also a plain, adequate and complete remedy at law. G. L. (Ter. Ed.) c. 214, § 1. *Billings* v. *Mann*, 156 Mass. 203, 204. This court said in *Wilkinson* v. *Stitt*, 175 Mass. 581, 583, "we have never supposed that the fact ·that an action for the money had and received would lie at law was sufficient to oust the jurisdiction of the court in equity to compel the delivery of the money . . . [if] the *cestuis que trust* elected to proceed in that court."

The defendant Santosuosso, in his brief, putting to one side the allegation of detail as to the methods pursued, directs attention to the circumstance that the bill of complaint alleges two facts: (1) "That the defendant Curley was mayor of the city"; and (2) "That the city's money was unlawfully obtained." He asserts that "If there is

equity jurisdiction [in this suit], it must rest upon one or both of these allegations." He further says: "Put in another form, the contention that there is equity jurisdiction must rest upon the proposition that the defendant Curley, because he was the mayor, was a trustee of an intended trust; or that the defendants became constructive trustees because they unlawfully obtained the plaintiff's money." He concedes that if the defendant Curley was trustee of an actual or intentional trust, "there would be equity jurisdiction to recover money, part of the trust *res*, which, on the allegations of the bill, had been unlawfully misapplied or misappropriated"; and "that such jurisdiction over an express trust would not be lost because of the fact that the defaulting trustee had dissipated the fund," citing *Jones* v. *Jones*, 297 Mass. 198, 203. He further concedes "that one could be joined with the defaulting trustee who had combined or coöperated in the misapplication of the trust funds," citing *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97, 103.

This defendant contends, however, that the "obligation of a mayor with respect to the duty to exercise fidelity or honesty is no different from that of other public officials," and that such fiduciary obligation falls short of or is distinguishable from the express or intended trust relationship to which his admission applies. This argument is covered and overcome by the rule that, even where no trust was declared or inferred and money has been received under such circumstances, it ought to be paid back. Not only is the money held in trust, but the property into which it is put is held in trust. *National Mahaiwe Bank* v. *Barry*, 125 Mass. 20. *Angle* v. *Chicago, St. Paul, Minneapolis & Omaha Railway*, 151 U. S. 1, 26. In this connection it may be well to remember that "fiduciary relationship" has been defined as "one in which, if a wrong arise, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the *cestui que trust.*" *Smith* v. *Smith*, 222 Mass. 102, 105, citing *National Bank* v. *Insurance Co.* 104 U. S. 54, quoting *Ex parte Dale & Co.* 11 Ch. D. 772, 778.

On the facts admitted by the demurrers the codefendants made an agreement to get legal title to the city's money when one of them was under the fiduciary duty, as mayor of the city, to protect the property of the city, *Kelly* v. *Allin*, 212 Mass. 327, 331; and the plaintiff's right to relief is not affected by the fact that the city also had a remedy at law. The case of *Waters* v. *Boyden*, 275 Mass. 564, relied on by the defendants, is not in point; there was no fund to which the defendant had acquired legal title from the beneficiary; there was no *res*; the bill was for a legal accounting; and the amount was not complicated.

Respecting the pleas, the allegations of the bill of complaint disclose that the scheme which the defendants adopted for getting the trust fund into their possession was to have an agreement for judgment entered against the city, in an action in which a verdict under leave reserved had been entered for the city because there was no liability on the part of the city. The pleas set up this judgment as a bar, both at law and in equity. The defendants in the pending suit were neither parties nor privies to the judgment entered by consent. It is plain that the judgment thus obtained is not *res judicata* in favor of or against the present defendants because neither of them was a party to it.

The result is that the interlocutory decrees overruling the demurrers were right, and the decrees adjudging the pleas insufficient but without prejudice to set up the facts in the answers were right. They are affirmed.

*Ordered accordingly.*