(No. 24898.—

THE PEOPLE *ex rel.* Leon M. Schuler, County Collector, Appellee, *vs.* EMMA F. CHAPMAN, Appellant.

*Opinion filed February 15, 1939.*

BARNABAS F. SEARS, and DONALD F. SCHUMACHER, for appellant.

CHARLES A. O'CONNOR, State's Attorney, (CARLETON A. SHULTS, and FRANK REID, JR., of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant appeals from a judgment of the county court of Kane county overruling her objections to a tax assessed in 1936 as omitted property, in the years 1927 to 1930, inclusive, and ordering sale of the property consisting of a certain lot and parts of lots in the city of Aurora, improved with a four-story building. Subsequent to 1923 no improvements or additions have been added to the building.

For the quadrennial assessment 1923 to 1926, inclusive, the property was assessed as improved real estate of a value of $60,000. Taxes were extended on that assessment on a valuation of $30,000, under the law then in force extending taxes on fifty per cent of the assessed value, and were paid by appellant. For the quadrennium, 1927 to 1930, inclusive, the property was assessed by the assessor, apparently through mistake, at $6600. The assessment was in regular form and the assessor's oath was affixed thereto as required by statute. This assessment was approved by the board of review for those years and its oath attached to their record. Taxes were extended thereon in each of the years and the taxes so extended were paid or caused to be paid by appellant. By the quadrennial assessment in 1931, the assessor fixed the value of the premises in question in the amount of $66,000. This valuation was reduced in 1932 to $52,800.

In 1936, the difference between the valuations on this property for the years 1927 to 1930, inclusive, and that of other years, came to the attention of the board of supervisors of Kane county. A committee of that board reported an error had been made by the assessor in transcribing the proposed valuation which was $66,000, but was transcribed as $6600; that the assessment books for 1927 to 1930, inclusive, show the assessed value of the improved lots was fixed at $6600, but that the assessment books failed to show that the assessor complied with the law in separating the land value from the value of the improvements and

listing them in separate columns. The suggestion was made that the board of review take necessary action to compel the property in question to pay its correct tax for the years 1927 to 1930, inclusive.

The board of review, after notice to appellant and a hearing, found that the improvements on said premises were not listed and valued by the assessor in the years 1927 to 1930, inclusive; placed the value of the improvements for those years at $42,000; assessed said property at that value and ordered an assessment for the years 1927 to 1930, inclusive, as omitted property. Appellant not having paid the tax thus extended in 1936, application for judgment against the property for delinquent taxes for those years, amounting to $9510.20, was made. Appellant filed written objections enumerating sixteen reasons why she should not pay the tax.

The county court found, as a fact, that the local assessor, in transcribing the assessed value of $66,000 for the 1927 to 1930 quadrennial assessment from his workbook to the assessment record filed with the county clerk, made a mistake, leaving off a cipher, so that the valuation of the premises as returned in the assessor's books filed with the county clerk was $6600 instead of $66,000. That court also held that the finding of the board of review that the improvements on the property had been omitted during the period in question was purely arbitrary and not based upon any evidence in the record; that the record showed an assessment of improved property, but concluded that the assessment during the years in question was so low as to show fraud and was void, and, therefore, no assessment at all, and the improvements upon the premises should be deemed to have been omitted from general tax assessments for those years. Objections were overruled and judgment entered for the sale of the property.

Sections 12 and 14 of the Revenue act of 1898, (Ill. Rev. Stat. 1937, chap. 120, pars. 291, 293, p. 2678,) so far as material here, are as follows:

Section 12: "The assessor shall, before the first day of June in the year 1899 and every fourth year thereafter, in person or by his deputy, actually view and determine as near as practicable the value of each tract or lot of land listed for taxation as of the first day of April of each year, and assess the same at the value required by law, setting down the sum in proper columns prepared therefor in duplicate books furnished him; * * *. In making such assessments he shall set down his valuation of improved tracts and lots in one column, and his value of unimproved tracts and lots in another column. He shall, also, between the first day of April and the first day of June in each intervening year, list and assess in like manner all real property which shall become taxable and which is not upon the general assessment, and also make and return a list of all new or added buildings, structures or other improvements of any kind, the value of which shall not have been previously added to or included in the valuation of the tract or lot on which such improvements have been erected or placed. * * * And in case any assessor shall fail or neglect so to do, then the supervisor of assessments shall, in the case of such new or added improvements, assess the same according to the assessment of the same property in the general assessment, and in the case of such destruction shall abate from the assessment of the tracts or lots so damaged or lessened the proper proportion thereof," etc.

Section 14: "On or before the first day of June in each year, other than the year of the quadrennial assessment, the assessor shall determine the amount, in his opinion, of any change in the value of any tracts or lots of land by reason of any injury to, alteration in or addition to, the improvements thereon since the first of April in the preceding year and prior to the first of April in the current year, and add to or deduct from the assessment accordingly, setting down the amount of such change in a proper column in the assessment books: * * * The value of

lands and improvements shall be separately fixed, and shall in any assessment made hereafter be set down in separate columns in said assessor's books. The assessors shall not in any year, except the year of the quadrennial assessment, change the valuation of any real estate or improvements or the division thereof, except as above provided in this section," etc.

Appellee, to sustain the judgment, contends that the valuation for assessment purposes of the property in question in the quadrennial year 1927 to 1930, inclusive, was a lump-sum assessment and was void for the failure of the assessor to value the land and improvements separately, and, the assessment being void, a subsequent board of review had a right to assess the same as omitted property, relying on *People* v. *Birtman Electric Co.* 359 Ill. 143. That case does not hold that a quadrennial assessment of improved real estate as a unit, instead of separately as to land and improvements, is void. The only question in that case was the power of the board of review to assess improvements as omitted property, it being conceded that the improvements on the property there involved were not assessed at the time of the quadrennial assessment in 1927. What was there said has no application to the inquiry in the instant case where the assessor's books expressly show that the property in question was assessed as improved property. A judicial opinion, like a judgment, must be read as applicable only to the facts involved and is an authority only for what is actually decided. (*White* v. *Seitz,* 342 Ill. 266.) It was pointed out in that case, that to arrive at an aggregate assessment on improved real estate it is the duty of the assessor to give consideration to the several items which constitute the entity. When this is done the assessment cannot be reviewed in a subsequent year, but if either the land itself or the buildings and improvements have been omitted, then that component part which was so omitted becomes a subject of assessment for taxation in a subse-

quent year. The assessment here in question shows total value as improved property.

From 1921 to 1930, inclusive, this property was assessed as improved real estate, but the valuations of the lands and of the improvements were not placed in separate columns but in one column as the total assessed value of real estate and improvements. It is conceded that the custom is, and has been for many years in Kane county, to so list improved real estate on quadrennial assessments. It is clear that section 14 of the Revenue act, requiring separate listing of lands and improvements, applies only to assessments in years other than those of quadrennial assessments. Section 12 requires separate listing not of lands and improvements thereon, but, as plainly stated, vacant lands shall be separately listed from improved lands.

In *People* v. *Swanson*, 347 Ill. 649, this court had occasion to pass upon the necessity of assessing lands and improvements separately. In that case an objection was that an assessment of improved real estate by the board of assessors and board of review was so excessive as to amount in law to a fraud. The land and improvements had been listed separately and, upon a hearing on objections before the county court, the objector moved to confine the hearing to the land values as fixed by the assessor and board of review, and to exclude the valuation of either board, as to the improvements. The court overruled the motion and the objections. In this court the sole question presented was whether the objector had a right to submit only the question of the alleged fraudulent and excessive valuation of lands and to have excluded from consideration the value of the improvements. In support of his contention the objector cited section 14, the pertinent portions of which are hereinabove set forth, pertaining to the assessment of lands and improvements separately. In passing on that contention this court held that section 14 had no application to the question at issue there, but applies only to years other

than general assessment years where the assessor is of the opinion that there has been such an increase or decrease in the value of the improvements as to justify a reassessment, in which case he is to fix the value of the lands and the value of the improvements separately and place them in separate columns. It was also there said: "Section 12 of the same act provides that in making a general assessment the assessor shall set down his valuation of improved tracts and lots in one column and his valuation of unimproved tracts and lots in another column. In assessing improved real estate the assessing body places a valuation upon the land and a valuation upon the improvements, but it is evident from section 12 and various other sections of the Revenue act, * * * that the assessment, when finally completed, is based upon the value of the land and the value of the improvements taken together. It is one assessment and not separate assessments, as contended by appellant."

The assessor's books show that the property involved was, in the quadrennial assessment of 1927, assessed as improved property and appellee's contention that the assessment was void for failure to value the improvements separately from the real estate is without merit.

Though the power of the State to provide for the levy and collection of taxes by legislative enactment is unlimited, except as restricted by State and Federal constitutions, the power to levy taxes is purely statutory and they can be levied, assessed and collected only in the mode expressly pointed out in the statute. (*People* v. *Sears,* 344 Ill. 189.) In case of doubt, statutes imposing a tax are construed most strongly against the government and in favor of the property owner. *People* v. *Sears, supra.*

The undisputed record is that no change has been made in the improvements on said lots in question; that they were, from 1923 to 1926, inclusive, assessed at $30,000, under the law in effect at that time authorizing the assessed valuation to be one-half of the full value thereof. The

assessor in his workbook, in making up the quadrennial 1927 to 1930 assessment, noted a valuation on this property in the sum of $66,000. The evidence in the record tends to prove, and the finding of the county court is, that the assessed value of $6600 occurred through mistake. We hold that finding to be justified.

Appellee insists that the valuation of the property in question for assessment purposes was so grossly low and out of proportion to the true value of the property as to amount to a fraud upon the State, and a subsequent board of review had a right to assess the same as omitted property. In support of this contention appellee cites *Lambrecht* v. *Wilson,* 290 Ill. 547. In that case a bill was filed to restrain the county collector from collecting taxes assessed by the board of review on omitted credits for previous years. Schedules in each of the years were filed by the taxpayer but the board of review determined that credits were not assessed in those years. The bill charged that assessments had been made on all of the taxpayer's personal property, including credits; that taxes had been extended on said assessments and paid by her and that the back-tax assessment made by the board of review was without authority, illegal and void. This court there held that when credits have been assessed and taxes extended upon the assessments and paid by the taxpayer, the board of review, in subsequent years, has no authority to increase such assessments upon the theory that the assessment was too low or that the board, in assessing, omitted credits, citing *Warner* v. *Campbell,* 238 Ill. 630; that the assessor is required, in determining value of property assessed, to exercise his judgment, and that his acts are in the nature of judicial acts and not subject to review by his successor, or by the board of review, for errors of judgment. This court in that case also said: "This is undoubtedly true where the values fixed by the assessor are within the range of values which might be fixed by any man exercising honest judgment. Values

are necessarily a matter of opinion, and different men with the same honest intention would arrive at different conclusions. Mere mistakes of the assessor or errors of judgment will not invalidate an assessment, but valuations must be the result of honest judgment and not of mere will.—*Chicago, Burlington and Quincy Railroad Co. v. Cole,* 75 Ill. 591."

It was also there held, that where the valuation is so grossly out of proportion to the true value as to show that the assessor could not have been honest in his valuation, the assessment may be impeached for fraud, and by reason of fraud in making the assessment it amounts to no assessment at all, citing *State Board of Equalization v. People,* 191 Ill. 528, *People's Gas Light Co. v. Stuckart,* 286 id. 164, and *Weyerhaueser v. Minnesota,* 176 U. S. 550, 20 Sup. Ct. 485. In *Barkley v. Dale,* 213 Ill. 614, it was held that overvaluation or undervaluation of property will not, of itself, invalidate an assessment.

In *Lambrecht v. Wilson, supra,* this court found that the action of the assessor amounted to fraud because his assessment voluntarily made could not have been an honest one. No evidence appears here indicating fraud but the evidence does show a mistake in entering the assessment. Mistake is not fraud. Nor can it become fraud by so designating it. It is fraud and not mistake that can be corrected. Fraud is never presumed, and while, in the absence of evidence of mistake, an assessment may be so low or so high as to indicate fraud and so justify a finding of fraud, and therefore, a holding that no assessment was made, such a finding cannot be made where the evidence not only shows no fraud but shows a mistake.

The assessment shows on its face that it was made on improved property, and the evidence shows that because of an error of the assessor or his deputies the amount was placed thereon at $6600. Appellant insists that since this is so and the tax was paid in full, the board of review did not have authority to tax improvements as omitted property.

In support of this contention her counsel say that when the board of review, in the years 1927 to 1930, inclusive, signed the affidavit completing the levy of the assessment of the assessor for each of those years, its authority over said assessment ceased and cannot be reviewed by a subsequent board. It is a well-settled rule in this State that when the assessment books are complete and are delivered to the county clerk, the assessment as completed, and as it is equalized by the State Tax Commission, is the assessment upon which the taxes are to be extended and upon which the rate per cent of the taxes can be computed; that an original assessment may, therefore, be made by the board of review up to the time the books are returned; but after the necessary affidavits have been appended thereto and the board has adjourned, the board has no power to change or alter the assessment books so as to change or affect the taxes for that year. (*People* v. *Board of Review,* 363 Ill. 106; *Kimball & Co.* v. *O'Connell,* 263 id. 232; *Carney* v. *People,* 210 id. 434.) It follows that the board of review, in a subsequent year, has no power or authority to change an assessment so approved by a previous board. If property is not assessed, then under section 35 of the Revenue act a succeeding board of review has the power to assess it as omitted property. The board of review has, however, only such authority as is given it by the statute. *People* v. *City of St. Louis,* 367 Ill. 57; *People* v. *Board of Review, supra; People* v. *Sheridan-Brompton Building Corp.* 331 Ill. 495; *People* v. *Keogh,* 306 id. 323.

We are of the opinion that as appellant's property was assessed as improved property in the years 1927 to 1930, inclusive, and the taxes for those years, as extended against it, were paid, the board of review of a subsequent year, though the assessment through mistake was too low, was without authority to assess the improvement as omitted property, or on the ground that the assessment was void because of fraud.

Appellee insists that the judgment rendered by the trial court was in accordance with section 191 of the Revenue act of 1872, as that section authorizes a judgment "as the right of the case may be," and that the court's judgment was right. We cannot agree with this contention. The provision of section 191 that the court shall pronounce judgment as the right of the case may be, does not apply to a case such as this. The language "as the right of the case may be," in section 191, can only mean "right" under the statutes governing the assessment of property for taxation. Otherwise the result would be a levy of taxes by the court, a power courts do not have. *Wabash Railroad Co.* v. *People,* 196 Ill. 606.

The county court erred in overruling appellant's objections. The judgment of that court is reversed and the cause remanded, with directions to sustain the objections.

*Reversed and remanded, with directions.*