(No. 48296.-

THE CITY OF CHICAGO *ex rel.* JANICE COHEN, Appellant, v. THOMAS E. KEANE *et al.,* Appellees.

*Opinion filed Oct. 1, 1976.—Rehearing denied Dec. 2, 1976.*

UNDERWOOD, J., specially concurring.

Gerald Eisen and Michael P. Cohen, both of Niles, for appellant.

Jerome H. Torshen, of Chicago, for appellee Thomas E. Keane.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The complaint in this case was filed in the circuit court of Cook County by Janice Cohen on behalf of the City of Chicago. It seeks an accounting from the defendants, Thomas E. Keane, Adeline Keane, and John Hennessey, Sr., for all profits made by them through an alleged scheme to defraud the City and its citizens. The circuit court dismissed the complaint, and the plaintiff's appeal was brought here under Rule 302(b). Only the defendant Thomas E. Keane (for convenience referred to hereafter as "the defendant") has filed a brief as appellee.

The complaint alleges that the plaintiff is a taxpayer and resident of the City, and that the defendant was at all material times an alderman and the chairman of the Committee on Finance of the city council.

Summarized, the conduct alleged in the complaint is as follows: As a result of his official position, the defendant was able to ascertain in advance that certain areas in the City would be the site of urban renewal and housing projects. Acting through nominees, he purchased, at scavenger tax sales, various tax delinquent parcels lying within those areas. Upon the purchase of the land, legal

title was placed in land trusts in which the defendant held a substantial beneficial interest. Some of the property acquired was at that time subject to the liens of unpaid special assessments. The defendant, in his capacity as chairman of the Committee on Finance, recommended to the city council, without disclosure of his interest, that the council clear those liens by foreclosure or by an alternative procedure termed a "Compromise Offer in Lieu of Foreclosure." The defendant's recommendations were adopted by the council. After the liens had been cleared, the defendant used his official position and influence to induce the Chicago Housing Authority, the Chicago Dwellings Association, the Metropolitan Sanitary District, and the Department of Urban Renewal of the City of Chicago to purchase some of the properties which he had purchased.

The present action was commenced on May 10, 1974, after an indictment had been returned in the United States District Court for the Northern District of Illinois on May 2, 1974, which charged the defendant with mail fraud and conspiracy in connection with the same property transactions. A jury found the defendant guilty, and his conviction was affirmed by the Court of Appeals for the Seventh Circuit on August 18, 1975. (*United States v. Keane,* 522 F.2d 534, *cert. denied* (1976), 424 U.S. 976, 47 L. Ed. 2d 746, 96 S. Ct. 1481.) The charges in the Federal indictment, a copy of which was filed in the present case by the defendant, are identical to the allegations of the present complaint, except that the latter omits references to the use of the mails.

The basis for the circuit court's dismissal of the plaintiff's suit, as appears from the court's memorandum opinion, was that a municipal taxpayer has no right to sue unless there has been a diversion or misappropriation of public funds or property that had once been in the possession of the municipality. The rationale of this limitation is that only in the situation described will the

plaintiff's taxes be affected. The trial court was of the opinion that the complaint did not allege that any of the land involved had been bought from or sold to the City, or that any municipal funds had been expended. Accordingly, the court reasoned, the City itself would have no right of action against the defendant, and as a consequence no derivative right of action existed on the part of the plaintiff or any other taxpayer.

For this conclusion the trial court relied on *Golden v. City of Flora* (1951), 408 Ill. 129. In that case the taxpayer plaintiffs challenged the validity of a collective bargaining agreement between the City and employees of municipally owned utilities, on the ground that the agreement would increase the employees' wages. Those wages were paid out of the revenue earned by the utilities and not out of tax funds. The court pointed out that the plaintiffs "do not seek relief as consumers of the utilities concerned," and concluded that the plaintiffs lacked standing to sue because they would suffer no injury as taxpayers. (408 Ill. at 132-33.) The principle of the *Golden* decision is not applicable here, because if the City has a right of action against the defendant for an accounting of his profits, recovery of those profits would necessarily reduce, *pro tanto,* the amount of taxes which the plaintiff and other taxpayers would otherwise have to pay.

We note initially that, contrary to the view taken by the trial court, the complaint does allege that some of the property in which the defendant held an interest was sold to the Department of Urban Renewal of the City of Chicago. The Department is not an entity separate from the City but is an agency of the City, and land acquired for urban renewal purposes by purchase or condemnation is paid for in part with City funds. (Ill. Rev. Stat. 1975, ch. 67½, pars. 91.102, 91.109.) The defendant asserts, without support in the record, that in the present case the land was purchased by the Department with funds received

from the Federal government. However that may be, we find the point irrelevant, since we hold that the liability of a government officer for profits gained upon the purchase and resale of property in a situation of the kind here involved is not limited to those instances in which the property was sold to a governmental entity.

The defendant appears to concede that liability may arise out of third-party transactions, but only, he contends, if the circumstances are such as to properly invoke the doctrine which prohibits a governmental officer from misappropriating a business opportunity belonging to the municipality. Such an opportunity could not exist here, it is said, because the purchase of property at a scavenger sale "was not in the line of the city's activities and the city had no legitimate interest or expectancy therein." Under the applicable statutes, however, the City had the power to become a bidder at the scavenger sale. (Ill. Rev. Stat. 1975, ch. 120, pars. 716a, 725.) If in fact the City did not exercise that power, its omission in that regard would furnish no defense to the defendant in view of his failure to disclose his own adverse interest in the matter. *Kerrigan v. Unity Savings Association* (1974), 58 Ill. 2d 20, 28-29; *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 304-05.

Two statutory provisions bear upon the case before us. One is section 3—14—4 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 3—14—4), which provides:

> "No municipal officer shall be interested, directly or indirectly, in any contract, work, or business of the municipality, or in the sale of any article, whenever the expense, price, or consideration of the contract, work, business, or sale is paid either from the treasury or by any assessment levied by any statute or ordinance. No municipal officer shall be interested, directly or indirectly, in the purchase of any property which (1) belongs to the municipality, or (2) is sold for taxes or assessments, or (3) is sold by virtue of legal process at the suit of the municipality."

The other is section 3 of the Corrupt Practices Act

(Ill. Rev. Stat. 1975, ch. 102, par. 3), which reads in pertinent part as follows:

> "No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. No such officer may represent, either as agent or otherwise, any person, association, trust or corporation, with respect to any application or bid for any contract or work in regard to which such officer may be called upon to vote. ***"

As has been pointed out, these and kindred statutes reflect the common law doctrine that "the faithful performance of official duties is best secured if a governmental officer, like any other person holding a fiduciary position, is not called upon to make decisions that may advance of injure his individual interest." *Brown v. Kirk* (1976), 64 Ill. 2d 144, 149.

The complaint alleges that the defendant used inside knowledge gained from his official position to ascertain the location of various proposed land development projects. Property located in those areas, if purchased at a scavenger sale and cleared of liens, could be expected to produce a prompt profit upon resale. The complaint also alleges that after having acquired such property the defendant recommended to the city council and voted in favor of the institution of procedures to clear the title to the property, and then brought about its sale to the purchasers named in the complaint.

In the case of a defendant who occupied a fiduciary position in the private sector, these allegations, if proved, would establish that he had exploited his fiduciary position for his personal benefit. The fiduciary responsibility of a public officer cannot be less than that of a private individual. In both instances it is gain to the agent from the abuse of the relationship that triggers the right to

recover, rather than loss to the principal.

The view we take of this case is in accord with that expressed by the Supreme Court of New Jersey in *Jersey City v. Hague* (1955), 18 N.J. 584, 115 A.2d 8. In that case the city brought suit against a former mayor and other city officials to recover sums of money which the defendants had exacted from city employees as a condition of their employment. The court held that the complaint stated a cause of action for restitution, arising out of the defendants' breach of their fiduciary duties. The court rejected the suggestion that restitution was inappropriate because the defendants' profits had not been made at the expense of the city. It remarked:

> "*** Restitution, by virtue of its adaptability to individual cases on equitable principles may, as we have seen, reach situations beyond the grasp of other civil or criminal remedies and do justice on equitable principles; see *Driscoll v. Burlington-Bristol Bridge Co., supra*, 8 N.J. 433, at pages 497-504, where various alternatives were weighed with a view to working out justice so far as possible to all concerned, but always on the fundamental basis of preventing the unfaithful public official or public body profiting from his or its wrongdoing." 18 N.J. at 595-96, 115 A.2d at 15.

Among the decisions relied on by the New Jersey court is that of the House of Lords in *Reading v. Attorney-General* (1951), A.C. 507, 1 All. E.R. 617. Reading, an army sergeant stationed in Egypt, had been paid a large sum of money by a gang of smugglers for riding on their trucks while wearing his uniform. Although the money had never belonged to the government, the House of Lords held that the government was entitled to seize it, since Reading had obtained it by misuse of his military position. See also *City of Boston v. Santosuosso* (1937), 298 Mass. 175, 10 N.E.2d 271.

In *United States v. Carter* (1910), 217 U.S. 286, 54 L. Ed. 769, 30 S. Ct. 515, an army engineer in charge of a harbor improvement used the extensive power and discretion entrusted to him to award contracts to a particular company with which he had a secret agreement for a share of its profits. Despite the absence of proof that the work performed was inferior or that the cost to the government had been increased, the Supreme Court held that the plaintiff was nonetheless entitled to restitution. As the court said:

> "It would be a dangerous precedent to lay down as law that unless some affirmative fraud or loss can be shown, the agent may hold on to any secret benefit he may be able to make out of his agency. The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent. If he takes any gift, gratuity or benefit in violation of his duty, or acquires any interest adverse to his principal without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received." 217 U.S. at 306, 54 L. Ed. at 775-76, 30 S. Ct. at 520.

The limited role which the trial court would assign to the rule forbidding conflict of interest on the part of a governmental officer seems to rest on the theory that the act of an officer can violate that rule only if the conflict has produced monetary damage to the governmental entity to which the officer has been elected or appointed. As the cases already discussed make clear, however, such a limitation cannot be imported into either the statutes or the common law rule. (See also Restatement of Restitution sec. 197 (1937); Restatement (Second) of Agency secs. 388, 395, 404A (1958).) To do so would plainly rob

them of their effectiveness. See Lenhoff, *The Constructive Trust as a Remedy for Corruption in Public Office,* 54 Colum. L. Rev. 214 (1954); Flaum and Carr, *The Equitable Bill of Accounting—A Viable Remedy For Combatting Official Misconduct,* 62 Ill. B.J. 622 (1974).

In its opinion the trial court took the position that section 1—5—1 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 1—5—1), which refers to suits by taxpayers, does not authorize suits like the present one. That section provides:

> "A suit may be brought by any taxpayer, in the name and for the benefit of the municipality, against any person to recover any money or property belonging to the municipality, or for any money which may have been paid, expended, or released without authority of law. ***"

The trial court reasoned that any monies which might be recovered from the defendant if the plaintiff should prevail were not, when this action was filed, "money or property belonging to the municipality" within the meaning of the statute. It was long since indicated, however, that this statutory provision was not intended to limit or confine the basic equitable principles upon which the taxpayers' action is grounded (*People v. Holten* (1919), 287 Ill. 225), and the analogy between the position of the taxpayer and that of the stockholder has been pointed out. 74 Am. Jur. 2d *Taxpayers' Actions* sec. 1 (1974).

We believe, too, that the policy considerations underlying the principle against conflict of interest cannot be measured solely in monetary terms. The defendant, it is alleged, was a municipal officer having power to recommend and vote upon the foreclosure or compromise of the liens of special assessments on the one hand, and the selection of sites for public improvement projects on the other. These are important matters which the public is entitled to have considered on their merits. The defendant's private interest would necessarily affect his judgment, as well as that of other aldermen whose vote might have

been different had they known of the defendant's personal interest. See *United States v. Keane* (7th Cir. 1975), 522 F.2d 534, 546-49.

We therefore conclude that the plaintiff has standing to sue, and that the complaint states a cause of action.

The judgment of the circuit court of Cook County is accordingly reversed, and the cause is remanded with directions to deny the defendant's motion to dismiss.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE UNDERWOOD, specially concurring:

I agree that the plaintiff has standing to sue and that the complaint states a cause of action, but for reasons differing from those stated in the opinion of the court.

Section 3—14—4 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 3—14—4) provides: "*** No municipal officer shall be interested, directly or indirectly, in the purchase of any property which *** (2) is sold for taxes or assessments ***." Section 1—5—1 of the Code states: "A suit may be brought by any taxpayer, in the name and for the benefit of the municipality, against any person to recover any money or property belonging to the municipality ***." The City held tax liens upon the real estate here involved (Ill. Rev. Stat. 1975, ch. 24, par. 9—2—65), and they, in my judgment, constituted a sufficient interest in property to bring this action within the scope of section 1—5—1 permitting actions by taxpayers for the benefit of the City to recover "any money or property" belonging to it. Similarly, defendant's conduct, in my opinion, violated the proscription of section 3—14—4 against municipal officers becoming interested in the purchase of property sold for taxes or assessments. Accordingly, I do not find it necessary to consider the other questions or cases discussed in the court's opinion.