(No. 62527)

THE PEOPLE *ex rel.* RICHARD M. DALEY, State's Attorney, Appellee, v. WARREN MOTORS, INC., *et al.*, Appellants.

*Opinion filed October 1, 1986.—Rehearing denied December 1, 1986.*

306

308

Edward W. Nicewick, of Chicago (Nisen, Elliott & Meier, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Henry A. Hauser, Deputy State's Attorney, and Mark R. Davis, Susan Condon and Daniel Cannon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

The defendants, Warren Motors, Inc., and its owner and president, Warren W. Ottinger, obtained reductions in real property tax assessments through a fraudulent

scheme involving personnel of the board of appeals of Cook County (the board). The State's Attorney of Cook County filed the action concerned here in the circuit court of Cook County, seeking an accounting and the imposition of a constructive trust upon the benefits realized by the defendants, *i.e.*, the illegally obtained reductions plus interest. The defendants filed a motion to sever any equitable cause of action from any of the law counts (see 87 Ill. 2d R. 232(b)) and a motion to dismiss the suit in equity on the ground there was an adequate remedy at law. The defendants filed a jury demand for trial on the remaining legal issues. The court denied both motions and struck the jury demand. At the close of evidence the court entered judgment for the plaintiff. The appellate court affirmed (136 Ill. App. 3d 505), and we granted the defendants' petition for leave to appeal under our Rule 315 (94 Ill. 2d R. 315(a)).

It is not disputed that from 1974 to 1980 a fraudulent scheme operated at the board of appeals of Cook County and that under the scheme certain employees of the board improperly arranged for reductions in property valuations which resulted in reduced tax assessments for the involved property owners. The pleadings reveal that at least 10 individuals, none of them the defendants here, were convicted on various Federal charges arising from their participation in the scheme.

Seymour Zaban, a commissioner at the board from 1973 to 1982, testified that the function of the board was to provide the property owner an opportunity to challenge the county assessor's valuation of his parcel of land and, consequently, to challenge the real estate tax assessment of the parcel. The procedure is initiated when the property owner files a complaint, Zaban said, and a hearing is scheduled at which the property owner may present information or documentation supporting his theory of an erroneous assessment. Zaban stated that

a corporate complainant must be represented by an attorney before the board and said that, legally, there is a presumption that an assessment is correct and that the burden is on the property owner to prove that the assessment is incorrect.

Zaban testified that the two elected commissioners who compose the board must approve a change in the assessment before it will become effective. Zaban, however, explained that, due to the increasing number of complaints filed before the board, the two commissioners have delegated authority to their deputy commissioners to approve assessment changes.

Thomas J. Lavin, who served as a deputy commissioner under Commissioner Harry Semrow from 1973 to 1978, testified to the corrupt scheme. He related that he employed "solicitors" or "runners" who would contact property owners and offer reductions in real estate tax assessments, which ordinarily would be effective for a four-year period, in exchange for one-half of the tax savings for the first year. When a property owner agreed to participate, a complaint, prepared by Lavin or a "runner," would be filed on the owner's behalf with the board. Lavin said that the property owner would be instructed not to appear at the hearing on the complaint. Lavin would insert a fraudulently reduced valuation on the complaint, and then place Semrow's initials on it. The document would be sent to Donald Erskine, the deputy commissioner for Seymour Zaban, and similarly Erskine would subscribe Zaban's initials on it. In due course, the property owner would be notified that the real estate tax assessment had been reduced.

Lavin identified five complaints that he prepared in this manner on behalf of Warren Buick (now Warren Motors) and Ottinger. Four of the complaints related to parcels of real estate near 5701 North Broadway, Chicago, owned by Warren Ottinger and leased to Warren Buick,

Inc.; the other complaint concerned Ottinger's condominium at 3470 North Lake Shore Drive, Chicago. Lavin testified that the initials "L.K." on the jackets of the four complaints concerning the dealership indicated they had been solicited by Lawrence Kelly. He said that Kelly gave him $8,000, which he said was his share of the money received from Ottinger for the reductions on the dealership property.

Lavin testified to the circumstances of the reduction of the condominium's assessment. He described a meeting with Ottinger in 1978 at the Warren Buick dealership, and his intention to purchase a car. He told Ottinger that he was starting a tax-consulting business, and he recalled that he asked if Ottinger wanted the real estate tax assessments reduced on his property. Ottinger replied that Kelly had handled reductions for him in the past, but Lavin assured him that he now was arranging the reductions. Lavin testified that Ottinger was interested in a reduction for his condominium and that, though he was no longer employed at the board, he entered the board offices after hours and fraudulently altered records to show a reduction of the real estate tax assessment of the condominium. He received $600 in cash from Ottinger. He also testified that he completed a financial statement while at the dealership in order to obtain financing for the purchase of a car, and that in the statement he disclosed that until January 1978 he was employed as a deputy commissioner at the board.

Warren Ottinger was called by the plaintiff as an adverse witness under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102). He said that during a conversation in late 1976 or early 1977 he complained to Lawrence Kelly about his high real estate taxes. Kelly responded that he might be able to help Ottinger in reducing the tax assessments. Although Ottinger had an attorney who handled the affairs

of the dealership, Ottinger met Kelly at Warren Buick and gave him the permanent index numbers of the parcels of land that he owned and leased to Warren Motors, Inc. (Parcels of land are given permanent index numbers which, under statute, become a legal description of the parcel (Ill. Rev. Stat. 1983, ch. 120, par. 511).) Ottinger said that they agreed that Ottinger would pay Kelly one-half of the tax savings for the first year of the quadrennial assessment period if Kelly was able to obtain a reduction in the tax assessments for the parcels. Several weeks later, Ottinger said that he received notice of assessment reductions and gave Kelly a check in the amount of $22,300.

Ottinger recalled that, sometime later in 1977, he was notified by the assessor's office that the assessed valuations for the same parcels of land were going to be increased for 1977. He said that he telephoned Kelly to tell him of the proposed increase and was assured by Kelly that the reductions would be reinstated. Ottinger later received notification from the board that the prior reduction approved by the board had been restored.

Ottinger also testified to a meeting in a restaurant with Lavin in 1979. Ottinger said that he told Lavin that he paid $22,300 to Kelly for the assessment reductions, and Lavin informed him that that was twice the amount typically paid. Ottinger admitted that at Kelly's trial on Federal charges he testified that he believed at the time of this meeting in the restaurant that Lavin was involved in the tax-assessment reductions, although, he said, he was aware of Lavin's involvement only through assumptions he made after media accounts of a Federal investigation at the board.

Ottinger corroborated Lavin's testimony that Lavin agreed to arrange a reduction in the assessment of the condominium and that he had paid Lavin $600 for the reduction.

Ottinger testified too on his own behalf. He said that he understood Kelly's occupation to be that of an insurance adjuster, and that he did not know that Kelly was going to use "improper means" to obtain the reductions. He did not know Lavin at the time the deductions were obtained on the parcels leased to the dealership. He said that he met Lavin on three or four different occasions, but that Lavin was never introduced as a deputy commissioner at the board. Ottinger recalled that during a meeting at the dealership Lavin offered to reduce the assessment on Ottinger's condominium, but Ottinger did not know how this would be accomplished. He became aware of an investigation into a corrupt scheme involving assessments at the board through media accounts in the latter part of 1979.

The defendants argue that they were deprived of their constitutional right to a trial by jury because, they say, the court failed to realize that the complaint sought a money judgment in a legal action under section 220 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 701). They point out that when legal and equitable issues are formed in the same proceeding, any legal issue for which a proper demand for a jury has been made must be submitted to a jury (*Dairy Queen, Inc. v. Wood* (1962), 369 U.S. 469, 8 L. Ed. 2d 44, 82 S. Ct. 894; *Beacon Theatres, Inc. v. Westover* (1959), 359 U.S. 500, 3 L. Ed. 2d 988, 79 S. Ct. 948; 87 Ill. 2d R. 232), and they contend that it was error for the court to strike their jury demand.

The defendants err in stating that the action here could have been properly brought under section 220. Section 220 states, where pertinent here:

"If any real property is omitted in the assessment of any year or number of years, so that the taxes thereon, for which such property was liable, have not been paid, or if any such property, by reason of defective description

or assessment thereon, fails to pay taxes for any year or years, in either case the same property, when discovered, shall be listed and assessed by the board of review or, in counties having a board of appeals, by the assessor either on his own initiative or when so directed by the board of appeals." Ill. Rev. Stat. 1983, ch. 120, par. 701.

The legislative intent underlying section 220 is to provide for the collection of omitted property assessments in instances when no taxes have been paid on the property as to those assessments. (*Holiday Inns of America, Inc. v. Tully* (1982), 106 Ill. App. 3d 1004, 1008; *In re Application of Rosewell* (1979), 73 Ill. App. 3d 225, 230.) In *Chicago Gravel Co. v. Rosewell* (1984), 103 Ill. 2d 433, this court was presented with the question of whether an action could be brought under section 220 to collect back taxes on a parcel of land that, due to clerical error, was underassessed by 60 acres. The court, in holding that the action was properly dismissed, cited *People ex rel. Schuler v. Chapman* (1939), 370 Ill. 430, and stated that the factors essential to the application of section 220 are, first, that the property is properly assessed and the taxes levied against the taxpayer, and, second, that the taxes are not paid. (*Chicago Gravel Co. v. Rosewell* (1984), 103 Ill. 2d 433, 439.) The court, of course, recognized that a taxing authority is not precluded from recovering taxes when the taxpayer has avoided their payment through fraud but did not state that recovery could be sought under section 220. *Chicago Gravel Co. v. Rosewell* (1984), 103 Ill. 2d 433, 438; *People ex rel. Schuler v. Chapman* (1939), 370 Ill. 430, 439.

Equity will assume jurisdiction and impose a constructive trust to prevent a person from holding for his own benefit an advantage gained by the abuse of a fiduciary relationship. (*Perry v. Wyeth* (1962), 25 Ill. 2d 250, 253.) At the time the tax assessments were reduced on the dealership property, Lavin and Erskine, in their ca-

pacities relating to the assessment and levying of taxes, were acting as fiduciaries for the people of Cook County. (See *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 564-65, and cases cited therein.) If a fiduciary acquires title to property by virtue of that relation, equity will regard him as a trustee of the legal title (*Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 113-14; *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 628), and the fiduciary responsibility of a public official cannot be considered less than that of a private person (*City of Chicago ex rel. Cohen v. Keane* (1976), 64 Ill. 2d 559, 565). Constructive trusts have been recognized as a proper remedy where a public official has breached his fiduciary responsibilities (*Village of Brookfield v. Pentis* (7th Cir. 1939), 101 F.2d 516; *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555; *City of Chicago ex rel. Cohen v. Keane* (1976), 64 Ill. 2d 559; *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623; *cf. Fuchs v. Bidwill* (1976), 65 Ill. 2d 503), and, considering the allegations, the plaintiff here properly sought relief in equity.

That Lavin reduced the tax assessment for Ottinger's condominium after he had been discharged by the board and was no longer a public official does not alter our conclusion. The reduction was accomplished through Lavin's experience as a deputy commissioner and his access to the office's records. It has been observed that "[t]he particular circumstances in which equity will impress a constructive trust are '*** as numberless as the modes by which property may be obtained through bad faith and unconscientious acts.' " *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 627, citing 4 Pomeroy, Equity Jurisprudence sec. 1045, at 97 (5th ed. 1941).

That the proceeding to have the trust imposed is against the third party that benefited from a public officer's breach of his fiduciary duty is not relevant. In *Chi-*

*cago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, the Chicago Park District and the Public Building Commission of Chicago filed a complaint seeking the imposition of a constructive trust to recover a portion of a condemnation award from the defendants. The complaint alleged that the defendants had bribed a city alderman to have their property rezoned so that the park district's proposed construction of park and recreational facilities could proceed on the property. This court rejected argument that the complaint seeking a constructive trust should be dismissed because the plaintiffs sought recovery from the defendants rather than from the bribed alderman. This court observed:

"It is a fundamental rule in the law of restitution that '[a] third person who has colluded with a fiduciary in committing a breach of duty, and who obtained a benefit therefrom, is under a duty of restitution to the beneficiary.' (Restatement of Restitution sec. 138(2)(1937); see also *Seminole Nation v. United States* (1942), 316 U.S. 286, 296, 86 L. Ed. 1480, 1490, 62 S. Ct. 1049, 1054; Restatement (Second) of Trusts sec. 326 (1959); Ashbell, *The Third Party Trusteeship: An Equitable Remedy Against Bribers and Corrupters of Public Officials*, 67 Ill. B.J. 160 (1978).) Recognition of this salutary principle has resulted in the imposition of constructive trusts on benefits obtained by third persons through their knowledge of or involvement in a public official's breach of fiduciary duty. (See *United States v. Carter* (1910), 217 U.S. 286, 54 L. Ed. 769, 30 S. Ct. 515; *City of Boston v. Santosuosso* (1940), 307 Mass. 302, 30 N.E. 2d 278; see also Lenhoff, *The Constructive Trust as a Remedy for Corruption in Public Office*, 54 Colum. L. Rev. 214 (1954).)" (78 Ill. 2d 555, 565.)

See also *Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 454-55.

The trial court acted properly in striking the jury demand. The Supreme Court has stated that the right to a jury trial is determined by the nature of the issue to be

tried. (*Ross v. Bernhard* (1970), 396 U.S. 531, 538, 24 L. Ed. 2d 729, 736, 90 S. Ct. 733, 738.) Here the one-count complaint presents the issue of whether the defendants should be declared constructive trustees of benefits they received through the fraudulent acts of deputy commissioners Lavin and Erskine. The trial court was correct in exercising its equitable jurisdiction.

In a contention that is metaphysical as well as legal, the defendants contend that there must be a definable and traceable *res* before a constructive trust may be imposed. They assert that the benefit from a tax reduction has no separate and distinct existence but is merely a "potential obligation of the defendants which was never separated from their general assets."

It was argued in *Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, that a constructive trust could not be imposed because the property obtained by the individual defendants was not traceable as it was distributed through a corporate codefendant. The court responded:

> "In making this contention one very important principle is overlooked, *viz.,*—there is a duty resting upon trustees not to commingle their own property with that of the beneficiaries, (*White v. Sherman* [1897], 168 Ill. 589,) and when they do so commingle, in cases where the fiduciary relation exists and they have obtained the property by reason and because of the fiduciary relationship, the burden then rests upon the trustees to show by strong and convincing evidence, the property, or the part thereof that belonged to them before the commingling took place." (394 Ill. 94, 111.)

(Accord, *Tcherepnin v. Franz* (7th Cir. 1973), 485 F.2d 1251.) The Supreme Court, in a case where there was a similar question, held that recovery of fraudulently obtained money from a captain in the Army Corps of Engineers was not "limited to property or securities into

which illicit gains have been traced," because the defendant's breach of the fiduciary relationship enabled the government to recover all he "received by way of gain, gifts, or profits *** irrespective of the actual damage [the government] has sustained or its ability to follow such gains into specific property." *United States v. Carter* (1910), 217 U.S. 286, 317, 54 L. Ed. 769, 780, 30 S. Ct. 515, 524.

The contention of the defendants that the benefits realized through the tax-assessment reductions are not recoverable because they were merely a "potential obligation of the defendants" is not persuasive. In *City of Chicago ex rel. Cohen v. Keane* (1976), 64 Ill. 2d 559, the defendant had used his position as a city alderman to gain inside information of proposed land-development projects so that he could purchase, through nominees, the land involved at scavenger tax sales. The defendant was also said to have recommended procedures to the city council to clear the title to the property, without disclosing his interest, and then using his influence to induce certain public agencies to purchase the property. He would resell the property for a profit. He asserted that he was not liable to the city for his profits because the business of the city did not include the purchase of property at scavenger sales; therefore, he argued, "the city had no legitimate interest or expectancy therein." (64 Ill. 2d 559, 564.) This court declared that "it is the gain to the agent from the abuse of the relationship that triggers the right to recover, rather than the loss to the principal." 64 Ill. 2d 559, 565-66.

The defendants assert that the only wrongful conduct attributable to them was a failure to inquire into the circumstances of the tax-assessment reductions, which they say is insufficient evidence for the imposition of a constructive trust. The argument is unconvincing. A constructive trust may be imposed upon benefits obtained

by a third person through that person's knowledge of or involvement in a public official's breach of a fiduciary duty. (*Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 565; *A. T. Kearney, Inc. v. INCA International, Inc.* (1985), 132 Ill. App. 3d 655, 661.) The Restatement of Restitution puts it: "A person has notice of facts giving rise to a constructive trust not only when he knows them, but also when he should know them; that is when he knows facts which would lead a reasonably intelligent and diligent person to inquire whether there are circumstances which would give rise to a constructive trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know of such circumstances." Restatement of Restitution sec. 174, comment a, at 707-08 (1937).

Ottinger would have to have been invincibly innocent not to know that the reductions were improper. He arranged for Kelly to reduce the property tax assessment for his dealership properties though he knew Kelly was not an attorney and Ottinger had a regularly retained attorney to handle the legal affairs of the dealership. Ottinger did not provide Kelly any documents or evidence in support of a reduction, nor did he appear at any hearing to present the claim that the assessment should be reduced. All he did was give Kelly the permanent index numbers of the property for which he wanted reductions; he never inquired how the property tax assessments were to be reduced and were reduced. Ottinger paid Kelly $22,300. Later when he learned that the reduction had been rescinded, Ottinger notified Kelly, who assured him that he would "take care of it." The reduction was restored even though Ottinger again did not provide any evidence to support it. The defendants assert that Kelly would not have been paid by check if Ottinger suspected that there was something untoward about the reductions. The record does not supply an answer to this. Nor

does the record show whether the defendants claimed the $22,300 expenditure as a business expense on tax returns. If it was claimed, that would explain the payment by check.

The plaintiff sought the imposition of a constructive trust against the benefits realized by the corporate defendant through the reductions in tax assessments. The knowledge of or notice to an officer of a corporation generally is imputed to the corporation (*Sherwin-Williams Co. v. Watson Industries, Inc.* (1935), 361 Ill. 598, 605; *A.T. Kearney, Inc. v. INCA International, Inc.* (1985), 132 Ill. App. 3d 655, 662), and judgment was properly entered against the corporate defendant because of Ottinger's knowledge, as its owner and president, that illegal means were being employed to obtain the reductions.

We must conclude that he also knew or should have known of the circumstances of the reduction of the assessment on his condominium. He did not provide Lavin any supporting evidence or argument to justify a reduction in the tax assessment despite being aware, through Lavin's financial statement, that Lavin had been a deputy commissioner of the board. Moreover, Ottinger testified at the trial of Kelly that he knew Lavin was involved in the reductions for the dealership and that Lavin had told him that Kelly had charged him too much for those reductions.

The findings of the trial court will not be disturbed unless they are against the manifest weight of the evidence (*Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 30; *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 318), and we consider that here the findings of the trial court that Ottinger knew or should have known that illegal means were used to obtain his tax-assessment reductions are supported by the evidence.

Finally, the defendants challenge the rate of interest applied to the benefits received from the reductions in the property tax assessments. Without authority, and indeed without argument, they say that "if it was proper to include interest, it should be assessed at the general interest rate for liquidated claims not at the statutory rate for general unpaid real estate taxes." Points not argued may be considered waived. 87 Ill. 2d R. 341(e)(7); see *Collins v. Westlake Community Hospital* (1974), 57 Ill. 2d 388.

For the reasons given, the judgment of the appellate court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*