## West Chicago Park Commissioners v. Henry P. Carmody.

### Gen. No. 13,678.

1.  CONTRACT—*what constitutes, as between bidder and park commissioners.*    The acceptance by the park commissioners of a definite bid for work made pursuant to advertisement, constitutes a contract.

2.  CONTRACT—*what does not excuse performance.*    Sickness or indisposition does not excuse the performance of a contract.

3.  PENALTIES AND FORFEITURES—*when deposit accompanying bid forfeited.*    A deposit accompanying a bid duly made to park commissioners and by them accepted becomes forfeited upon the failure or refusal of the bidder to undertake and carry out the contract so made.

Assumpsit.    Error to the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding.    Heard in this court at the October term, 1907.    Reversed.    Opinion filed March 19, 1908.

**Statement by the Court.** Defendant in error was plaintiff and plaintiff in error was defendant in the trial court, and will be so referred to. January 25, 1906, the West Chicago Park Commissioners, defendant, advertised for bids for the doing of certain work mentioned in the advertisement, the bids to be received until four o'clock P. M., February 2, 1906, each bid to be accompanied with $500 in currency, or a certified check for that amount, on a responsible bank in the city of Chicago. The plaintiff Carmody bid for the work, specifying, as required by the advertisement, the prices at which he would perform each part of the work, and deposited with his bid the sum of $500. Bids were received by the defendant, and when opened and tabulated it was ascertained that plaintiff's bid was the lowest, when the following letter was addressed to him:

"West Chicago Park Commissioners,
Office in Union Park, Chicago.
February 21, 1906.
Mr. H. P. Carmody, 1804 W. Harrison St., City.

Dear Sir: At an adjourned regular meeting of the Board of the West Chicago Park Commissioners, held February 20, 1906, the entire work of laying two-inch universal cast iron water pipe in Douglas, Garfield, Humboldt and Union Parks, including trenching and back filling, was awarded to you as per your bid of February 2, 1906. If you will call at this office on Friday, we will have a contract and bond ready. Also bring a signed statement showing your financial condition, and oblige,

Yours very truly,
Joseph F. Haas,
Secretary."

Plaintiff produced and put in evidence this letter. The work mentioned in the letter is that on which he bid. The plaintiff, Carmody, testified that in compliance with the letter, he went to defendant's office on Friday, which was February 23, 1906, at 9:30 o'clock in the morning, and again at 3:30 o'clock in the afternoon, and was told that the

papers were not quite ready, and that he had with him, at that time, this letter:

"Chicago, February 22, 1906.
Mr. Joseph Haas, Sect. of West Park Board.

Dear Sir: In reply to yours of the 21st inst. in regards to my financial conditions, I desire to state that I own property at the corner of St. Louis and Harrison St., which I would not sell for $14,000, also over $8,000 in cash.

Yours truly,
HENRY P. CARMODY."

On the next Monday after plaintiff called at defendant's office, which was February 26, 1906, plaintiff went to Dr. St. John, for medical advice, as he says, and received from him this letter:

"West Chicago Park Commissioners,
Chicago;
B. A. Eckhart, Esq., President.

Dear Sir: On account of the very recent death of the wife of Henry P. Carmody, his nervous condition is such that I have advised him to discontinue all business for three months from date. I understand he is about signing a contract with your board, which will keep him busy for about three months. In my opinion he should not undertake the work.

Respectfully yours,
LEONARD ST. JOHN, M.D.
February 26, 1906."

February 26, 1906, the third day after plaintiff had called at defendant's office, as above stated, defendant wrote to plaintiff, addressing him as before, stating that the contract, as per his bid, was ready for execution, and requesting him to call and sign it and furnish bond. February 27, 1906, plaintiff went to West Baden, Indiana. It is apparent from a letter of date February 26, 1906, written by Mamie Carmody, that defendant's letter of that date was received at plaintiff's house. Mamie's letter, addressed to defendant, states that her father requested her to notify defendant that

he had been advised by his doctor to dispense with all business for some time. February 28, 1906, defendant again wrote to plaintiff, notifying him of having addressed him the letter of February 26, 1906, and stating the terms of that letter. The evidence shows that the letter of February 28, 1906, was delivered at plaintiff's residence. Plaintiff, in a letter of date March 1, 1906, written at West Baden, admits that defendant's letter of February 28, 1906, had been forwarded to him, and writes, "Having been taken suddenly ill, my physician, Dr. St. John, advised me to stop work and all business immediately; hence it will be impossible for me to comply with your request." Plaintiff did not return from West Baden to Chicago for about ten days.

The defendant, on failure of plaintiff to appear and sign a contract and furnish bond to secure performance of the work, declared plaintiff's deposit of $500 forfeited, and awarded the contract to the next lowest bidder. The plaintiff testified that in September, 1906, he asked Mr. Eckhart, defendant's president, for his deposit. The suit was commenced December, 1906. At the close of the evidence defendant moved the court to instruct the jury to find the issues for the defendant, and presented to the court an instruction to that effect, but the court overruled defendant's motion, and instructed the jury on plaintiff's motion, to find the issues for the plaintiff and to assess the plaintiff's damages at the sum of $500, which the jury did, and the court, after overruling defendant's motions for a new trial and in arrest of judgment, rendered judgment on the verdict.

BENJAMIN F. RICHOLSON, for plaintiff in error.

M. D. DOLAN and COBURN & CASE, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Section 11 of chapter 105 of the statutes, provides in respect to special assessments for the improvements of parks, as follows: "The remainder of the proceedings in respect to

such special assessment shall be in accordance with article IX of the act of the General Assembly entitled 'An act to provide for the incorporation of cities and villages, approved April 10, 1872, and all acts amendatory thereof, so far as the same may be applicable, and all acts provided therein to be performed by the city or village shall also be performed by said park commissioners or park authorities," etc.    Hurd's Rev. Stat., p. 1468.    By section 18 of the same chapter it is provided: " All the provisions of said article IX in respect to contracts for making any such improvement, and for the letting of such contracts    *    *    *    shall each and all be applicable to such proceedings taken by said park commissioners or park authorities."    *Ib.* p. 1469.

Section 98 of an act entitled "An act concerning local improvements," in force July 1, 1897, is as follows:

"Wherever authority of law now exists in corporate authorities in this State to levy special assessments or special taxes for local improvements, and for that purpose to use the proceedings or methods provided by article IX of an act entitled 'An act to provide for the incorporation of cities and villages'; approved April 10, 1872, in force July 1, 1872, such corporate authorities are hereby authorized to make use of the provisions of this act for such purpose, with the same effect and to the same extent as heretofore authorized to use the provisions of said article IX; and any such corporate authorities as may be hereafter authorized by law to levy such special assessments or special taxes, may, whether otherwise expressly authorized thereto or not, make use of the provisions of this act in like manner."    Hurd's Rev. Stat. 1905, p. 428.

Section 76 of the same act provides:    "All proposals or bids offered shall be accompanied by cash or by a check payable to the order of the president of the board of local improvements, in his official capacity, certified by a responsible bank, for an amount which shall not be less than 10 per centum of the aggregate of the proposal"; and section 77 of the act provides:    "But if the said bidder fails, neglects or refuses to enter into a contract to perform said work

or improvement, as herein provided, then the certified check accompanying his bid, and the amount therein mentioned, shall be declared to be forfeited to said city, village or town, and shall be collected by it and paid into its fund for the repairing ·and maintenance of like improvements; and any bonds forfeited may be prosecuted, and the amount due thereon collected and paid into said fund." By the words "enter into a contract" in the provision last quoted, is meant a formal written and signed instrument evidencing the contract.

The plaintiff Carmody, in response to the advertisement by the park commissioners, made a definite bid for the work, and the park commissioners accepted his bid as made. The bid and its acceptance constituted a contract between the parties, and the execution thereafter of a formal written instrument embodying the terms of the contract would not be the contract itself, but merely evidence of it.

In 1 Parsons on Contracts, section 476, 6th ed., the author says: "Thus an offer to sell a certain thing, on certain terms, may be met by the answer, 'I will take that thing on those terms,' or by any answer which means this, however it may be expressed; and if the proposition be in the form of a question, as, 'I will sell you so and so; will you buy?' the whole of this meaning may be conveyed by the word 'yes,' or any other simply affirmative answer. And thus a legal contract is completed."

In 7 Eng. & Am. Ency., 2d ed., p. 125, this language is used: "All express executory contracts resolve themselves, upon analysis, into an offer by one of the parties and an acceptance of that offer by the other. The act of acceptance closes the contract, and ordinarily nothing further is required to make the obligations effective. No especial formalities are required."

In Garfielde v. United States, 93 U. S., 242, the United States advertised for proposals for carrying mails. Garfielde made a proposal which the Government accepted, in reference to which the court said: "The Court of Claims holds that the proposal on the part of Garfielde, and the accept-

ance of the proposal by the department, created a contract of the same force and effect as if a formal contract had been written out and signed by the parties.    Many authorities are cited to sustain the proposition.    We believe it to be sound, and that it should be so held in the present case."

Plaintiff was notified by the specifications for the work, which he signed, and by the statute, that in order for his bid to be considered, it was necessary for it to be accompanied with $500 in money, or a certified check for that sum, and he must be presumed to have had knowledge of the law that, if he failed, neglected or refused to enter into a formal contract for the performance of the work, his money would be forfeited.    He certainly failed and neglected so to do, and the excuses which he gives for so failing and neglecting are of the most flimsy character.    When he called at the defendant's office February 23, 1906, he does not even show that he was even ready to receive the written contract from the defendant had it been ready.    The specifications which he signed require a bond with surety satisfactory to the defendant, for $5,000, guaranteeing the satisfactory completion of the contract within the time limit, and indemnifying the board against any loss or damage which might or could result by or through the carrying out of the contract.    Manifestly, he was not entitled to receive a formal contract, executed by the defendant, until he should furnish such bond.    Yet, so far as appears from the evidence, he had not such bond with him when he visited defendant's office February 23rd, nor did he at that time, or any time, offer any surety, in case the defendant was to draft the bond. February 24th was Saturday and February 25th Sunday, and on February 26th, the day when defendant wrote plaintiff that the contract and bond were ready to be executed, he procured a letter from a physician stating that he was in a very nervous condition and that he, the physician, had advised him to discontinue all business for three months, and February 27th he left for West Baden, Indiana, where he says he remained for ten or twelve days.    He never went to defendant's office again.    Our impression from the evidence

is, that plaintiff, for some reason best known to himself, desired to relieve himself of the responsibility cast on him by the acceptance of his bid, and perhaps this was worth $500 to him. The contract was let to the next lowest bidder, whose bid exceeded plaintiff's $1,010, so that defendant lost at least $510 by plaintiff's default. The plaintiff clearly forfeited the $500 which he deposited with the defendant, and the court erred in sustaining plaintiff's motion to instruct the jury to find for him, and in overruling defendant's motion to instruct the jury to find for it.

The judgment will be reversed.

*Reversed.*