(No. 56505.—

GUST K. NEWBERG, INC., Appellant, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Appellee.

*Opinion filed October 21, 1983.*

Carey, Filter, White & Boland, and Arnstein, Gluck & Lehr, of Chicago (Edward M. White, Edmund P. Boland, and Louis A. Lehr, Jr., of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Richard E. Friedman and Randall E. Server, Special Assistant Attorneys General, of Chicago, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

In 1975, Newberg-Krug-Brighton (hereinafter Newberg), a joint venture consisting of three corporations, filed a two-count complaint in the circuit court of Du Page County against the Illinois State Toll Highway Authority (the Authority) seeking $9 million in damages for

an alleged breach of contract in connection with the construction of two sections of the East-West Tollway extension.

After the complaint was filed, Richard Blakely, the Authority's executive director, directed Assistant Attorney General John Lavery, chief of the legal department of the Authority, to enter into settlement negotiations with counsel for Newberg.

In July of 1976, counsel for Newberg somehow informed Lavery that Newberg would settle the pending litigation for $2.75 million. The record does not show the manner in which that offer was made. We do not find a written offer in the record. On July 12, 1976, Lavery wrote a letter to then Attorney General William J. Scott advising him of the offer that had been made and explaining that the offer would be communicated to the board of directors of the Authority at a board meeting the latter part of July, and notifying him that a resolution approving the settlement had been prepared and would be adopted if the board decided to settle the litigation. On July 30, 1976, Lavery did present a formal resolution, No. 9634, with the proposed terms of the settlement, to the board. The resolution, approving the settlement and authorizing and directing the Authority's legal department to execute "any and all documents necessary to effectuate the settlement," was unanimously adopted by the board at that meeting.

On August 4, 1976, Attorney General Scott advised the board by letter that the board's adoption of the resolution was premature since discovery had not been taken in the case and therefore there was insufficient knowledge on the part of the Authority to determine whether settlement was in the Authority's best interests. At that time Attorney General Scott also expressed the opinion that Newberg's claim was without merit.

Again on August 25, 1976, Attorney General Scott

sent a letter to the board disapproving the proposed settlement of the claims against the Authority and expressing the belief that not only was Newberg's claim without merit, but also it was possible that the Authority had a substantial counterclaim against Newberg. He noted, too, that there might be other parties that would be required to contribute to any settlement of the matter. The Authority thereafter took no further action to effectuate the settlement; in fact, on October 1, 1976, the chairman of the Authority sent a letter to Attorney General Scott, informing him that the board would defer implementation of the resolution pending further advice from him and did in fact rescind the resolution in August 1977.

On November 18, 1976, Newberg amended its complaint to add a third count based upon breach of an alleged "settlement agreement," resolution No. 9634. The Authority filed a motion to dismiss count III in the circuit court of Du Page County. The Authority alleged in its motion to dismiss that the resolution the board had adopted did not create a binding contract, and contended that count III failed to state a cause of action since it did not allege that the Attorney General had approved the settlement—an allegation, the Authority asserted, that was essential to stating a cause of action for breach of contract in count III. The circuit court granted the Authority's motion to dismiss, and Newberg appealed the circuit court's dismissal of count III to the appellate court. *Newberg-Krug-Brighton v. Illinois State Toll Highway Authority* (1978), 63 Ill. App. 3d 780, *appeal denied* (1979), 72 Ill. 2d 583.

In that appeal, the appellate court concluded that it was not essential that "Newberg affirmatively plead either the Attorney General's approval of the settlement agreement or his acquiescence in the course of action sought to be taken by the Authority." (63 Ill. App. 3d 780, 783.) The court determined that section 15 of the

Toll Highway Act (Ill. Rev. Stat. 1975, ch. 121, par. 100—15) "authorizes and obliges the Attorney General in his representation of the Authority as its legal advisor to consider its contracts as to their *form and constitutionality* \*\*\* [but] does not confer upon the Attorney General an all-inclusive right to disapprove actions undertaken by the Authority pursuant to the powers granted to it by the General Assembly." (63 Ill. App. 3d 780, 782.) The court held that the motion to dismiss did not suggest that the action taken by the Authority by its resolution suffered from either form or constitutional inadequacies so that there was no statutory basis to support dismissal of count III of the complaint.

The court also concluded that even though it did not agree with the Authority's position that an allegation of the Attorney General's approval was essential to the legal sufficiency of the cause of action, the Attorney General "ha[d] the authority to direct the *legal affairs* of the State." (63 Ill. App. 3d 780, 783.) Therefore, the appellate court in that appeal remanded the cause to the circuit court, inviting the Authority or the Attorney General to assert any lawful basis which might exist by reason of which the settlement between the Authority and Newberg should not be carried out. The appellate court invited the Authority or Attorney General to assert reasons either relating to form or constitutionality of the alleged settlement contract under section 15 of the Toll Highway Act or any reason, such as fraud, which would require the Attorney General to exercise his authority as director of the State's legal affairs.

The appellate court also held that the issue of whether the Authority's resolution created a binding contract was an issue which was not to be determined by way of a motion to dismiss, but instead was an issue to be raised on remand, in the Authority's response to count III in the circuit court. The appellate court further

held that the Authority had not demonstrated "why it lacked the power to contract by adoption of a resolution by its board of directors" and held that, "[i]n the absence of an express statutory provision requiring a written contract or the signature of a particular person before such a resolution is binding upon the Authority, the general rule is that the acceptance of an offer by ordinance, resolution or motion creates a contract binding upon both parties." (63 Ill. App. 3d 780, 784, citing to 10 McQuillin, Municipal Corporations sec. 29.03 (3d ed. 1966); 56 Am. Jur. 2d *Municipal Corporations* sec. 497 (1971); *West Chicago Park Commissioners v. Carmody* (1908), 139 Ill. App. 635.) The resolution in this case, the appellate court pointed out, had not required that any particular written document be prepared or act be done before a contract would come into existence.

On remand in the circuit court, the Authority answered count III of Newberg's complaint, denying that it had authority to settle the claim against it and therefore asserting that the resolution had not been validly adopted by its board of directors. The Authority also raised a number of affirmative defenses, including several relating to the form and constitutionality of the resolutions. The Attorney General, the Authority contended, had not approved the resolution as to form and constitutionality and had not approved of the settlement.

After considering all the evidence, the circuit court of Du Page County found that the Authority and the Attorney General had failed to establish any defects in form or constitutionality which would prevent enforcement of the settlement resolution. It also found that the affirmative defenses raised by the Authority were without support in the evidence. The circuit court held that the settlement resolution was a binding contract between the Authority and Newberg and therefore held that the Authority was liable to Newberg in the sum of $2.75 million

for breach of the purported settlement agreement. The circuit court thereafter dismissed counts I and II of Newberg's complaint and provided that they could be reinstated in the event of a reversal by the appellate court in regards to count III.

The Authority appealed the circuit court's judgment on remand, contending that the agreement was invalid and unenforceable because it was not approved by the Attorney General. Newberg cross-appealed, contending it was entitled to prejudgment interest. *Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority* (1982), 103 Ill. App. 3d 557.

In this second appeal, a majority of the appellate court, one justice dissenting, reversed the circuit court's judgment that awarded Newberg $2.75 million, reinstated counts I and II of the complaint, and again remanded the cause to the circuit court.

The majority of the appellate court in this second appeal held that because the Attorney General set forth eminently reasonable grounds to disapprove of the dismissal of the pending litigation as proposed by the Authority, the Attorney General had acted well within the scope of his power to control the Authority's litigation in the public interest and was not arbitrarily interfering with the power of the Authority to contract or carry out its statutory duties. The appellate court reasoned that the Attorney General, in disapproving the settlement, was carrying out his broader responsibilities to the State, that of conducting the Authority's legal affairs. The court stated, "We conclude that in these circumstances the resolution by the Authority accepting Newberg's offer of settlement, predicated on the dismissal of the pending litigation, was unenforceable absent approval of the Attorney General. Neither the Authority nor the parties who seek to contract with it may overlook the power and duty of the Attorney General to con-

duct the litigation of a State agency, and the settlement resolution of the Authority was insufficient to impose liability upon it." 103 Ill. App. 3d 557, 562.

The appellate court also held that Newberg's contention that the Attorney General did in fact approve the settlement through Assistant Attorney General Lavery was without merit because Attorney General Scott had promptly rejected the proposed settlement of the litigation after passage of the resolution, thus effectively negating any suggestion of approval implied by the actions of his assistant. 103 Ill. App. 3d 557, 562.

It is from this judgment, the second appeal in the appellate court, that Newberg appeals to this court. We granted Newberg's petition for leave to appeal (87 Ill. 2d R. 315).

Preliminary to a determination of whether resolution No. 9634 was a binding contract, we must first decide whether Attorney General Scott's approval, as chief legal officer of the State, was necessary before there could be a valid contract and whether that approval was given.

Under the Toll Highway Act (Ill. Rev. Stat. 1977, ch. 121, par. 100—1 *et seq.*) "[t]he Authority shall have the power *** [t]o enter into all contracts and agreements necessary or incidental to the performance of its powers under the Act." Ill. Rev. Stat. 1977, ch. 121, par. 100—8(b).

The Authority argues that the resolution could not be a valid contract because the requisite approval of the Attorney General was not given.

The Authority maintains that section 15 of the Toll Highway Act (Ill. Rev. Stat. 1977, ch. 121, par. 100—15) makes approval of the Attorney General a condition precedent to an otherwise valid contract. Section 15 provides:

"The Attorney General of the State of Illinois, shall be ex officio attorney for the said Authority and he shall be its legal adviser and legal representative. In addition to

the specific duties imposed upon the said Attorney General, under the provisions of this Act, it shall be his further duty to act as attorney for the Authority in all of its transactions, and to represent the Authority in all of its litigation, and to examine and approve all contracts, leases, bonds or other undertakings or obligations entered into by the Authority, *as to their form and constitutionality prior to their execution and delivery.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 121, par. 100—15.

The Authority contends that under the plain language of the statute the Attorney General's approval "as to [the] form and constitutionality" of the resolution was required. In *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, the identical issue was presented to the appellate court and it held: "The clear purpose of section 15 is to protect the public generally and those specifically who invested in revenue bonds issued by the Authority by giving the Attorney General the power to approve or disapprove contracts as to form and constitutionality. In our opinion, the Authority and those who contract with it may not ignore this statutory requirement. *** In our view, where a statute prescribes the method by which an officer or agent may bind an administrative agency of the State of Illinois such as the Authority [citation], that method must be followed. *** Accordingly, we find that a contract entered into by the Authority may not be enforced absent approval by the Attorney General of Illinois as to form and constitutionality." (77 Ill. App. 3d 495, 501-02.) We agree with the Authority that approval of the Attorney General as to the form and constitutionality of resolution No. 9634 was necessary.

There is also no question that the Attorney General, in addition to being the attorney for the Authority by statute, is also the chief legal officer for the State and its departments and agencies. (Ill. Const. 1970, art. V, sec. 15; *People v. Massarella* (1978), 72 Ill. 2d 531, 534; *Environmental Protection Agency v. Pollution Control Board* (1977),

69 Ill. 2d 394, 398.) His duties are prescribed by law and also include those powers traditionally held by the Attorney General at common law. While the legislature may add to his powers, it cannot reduce the Attorney General's common law authority in directing the legal affairs of the State. See *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 493; *People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569, 575-76; *Stein v. Howlett* (1972), 52 Ill. 2d 570, 585; *People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 236; *Fergus v. Russel* (1915), 270 Ill. 304, 339.

The Attorney General had a valid basis on which to disapprove of the proposed settlement of the litigation. In his letter of August 4, 1976, only five days after adoption of the resolution, he advised the board of directors of the Authority that the resolution was premature because no discovery had been taken in the case. The Authority, he pointed out, lacked sufficient knowledge to determine whether the proposed settlement of the litigation was in the Authority's or the State's best interests.

On August 25, 1976, Attorney General Scott again informed the board that not only was Newberg's claim without merit, but also there existed the possibility that there might be other parties that would be required to contribute to any settlement of the matter. He advised the board that there was not sufficient reason to accept Newberg's proposed settlement and to do so would be a wrongful waste of public funds.

By his prompt objection setting forth eminently reasonable grounds to disapprove of the dismissal of the pending litigation as proposed by Newberg, the Attorney General acted well within the scope of his power to control the Authority's litigation in the public interest.

We agree with the appellate court's reasoning that because "Attorney General Scott promptly rejected the proposed settlement of the pending litigation after passage of

the resolution," he "effectively negat[ed] any suggestion of approval inferred by the actions of his deputy." 103 Ill. App. 3d 557, 562.

The assistant Attorney General here was directed by the Authority to determine whether a settlement was possible and, upon being told it was, he was further directed to prepare a proposed resolution approving a settlement for the Authority to consider. The assistant Attorney General did so at the direction of the Authority, not the Attorney General, and upon communicating the facts to the Attorney General, the proposed settlement was promptly rejected by him, thereby effectively negating any suggestion of approval implied by the actions of his deputy. As the appellate court correctly noted, the Attorney General was not seeking to arbitrarily interfere with the powers of the Authority to contract or otherwise carry out its statutory duties, but was reasonably carrying out his broader responsibilities in conducting the Authority's and the State's legal affairs. The resolution here, standing alone, was insufficient to impose liability upon the Authority.

The proposed resolution was prepared by Assistant Attorney General Lavery, he testified, allegedly only as an "informational item." Notwithstanding the general approval of a settlement figure indicated by adoption of the resolution, the record does not indicate that the precise terms and conditions of the settlement were ever established or that any actual settlement document was ever drafted. Before the Attorney General can exercise his responsibility to approve a settlement agreement there must be such an agreement drafted. In this case the resolution contemplated that there would be additional documents which could, when drafted, be submitted to the Attorney General for approval as to form. In particular the resolution directed the preparation of "any and all documents necessary to effectuate the settlement." The resolution adopted contemplated that there would be excepted from

the settlement certain claims the toll road was asserting against Newberg, and this required drafting much more than a simple release document. Before any document to effectuate the settlement was submitted to the Attorney General for approval as to form, the Authority rescinded its approval of the resolution. Consequently, it never obtained the Attorney General's approval as to form on any document required to effectuate the settlement. There is nothing in the record to indicate that counsel for Newberg ever read the proposed resolution prior to its presentation to the board or agreed that its terms were a true reflection of the alleged offer it had made to settle the litigation. If Newberg had read the resolution after the board's unilateral action of adopting it and disagreed with its terms as written by Lavery, whether Newberg would have been bound by the terms of the resolution is questionable. We also question why there was no communication of this alleged acceptance to Newberg after the board had adopted its resolution.

Because we have determined that the Attorney General did not give his requisite approval to the proposed settlement agreement, we need not resolve those other issues that go to the existence or nonexistence of a contract between Newberg and the Authority.

While in most instances it is true that if the parties involved in pending litigation agree to settle their case a court will recognize their decision to settle, it is not true that in all cases or in a case like the instant one where we are dealing with a State agency and the disbursing of public funds that the court will automatically dismiss a case and approve a settlement because of an alleged agreement between the parties to settle.

Since we are affirming the appellate court we need not, as the appellate court did not, consider the issues of damages and Newberg's cross-appeal for prejudgment interest since they are moot.

70

The judgment of the appellate court, reversing the circuit court judgment entered on count III of the complaint, reinstating counts I and II, and remanding the cause for further proceedings is affirmed.

*Judgment affirmed.*