SIXTH DIVISION

AUGUST 31, 2001

No. 1-00-2692 

MICHAEL LYONS, a State of Illinois     ) APPEAL FROM THE

taxpayer, and the BETTER GOVERNMENT ) CIRCUIT COURT

ASSOCIATION, an Illinois not-for-profit ) OF COOK COUNTY.

corporation, on behalf of and for the benefit )

of the STATE OF ILLINOIS, )

Plaintiffs-Appellants, )

)

v. )

)

GEORGE H. RYAN, CITIZENS FOR RYAN, )

a State political committee, SCOTT FAWELL, )

MARK SNIEGOWSKI, MIKE CHAMNESS, ) HONORABLE

and JOHN CHYCHULA, ) ELLIS E. REID,

Defendants-Appellees. ) JUDGE PRESIDING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs Michael Lyons and the Better Government Association (BGA), on behalf of and for the benefit of the State of Illinois, appeal an order of the circuit court of Cook County dismissing their claims against defendants George H. Ryan, Citizens for Ryan (a State Political Committee) (CFR), Scott Fawell, Mark Sniegowski, Mike Chamness and John Chychula. Plaintiffs had sought the imposition of a constructive trust on funds and benefits alleged to be illegally received by the defendants, as well as remedies provided by statute.  Plaintiffs also appeal an order of the circuit court of Cook County denying their motion to disqualify counsel for CFR.

The record on appeal discloses the following facts.  On November 18, 1999, plaintiffs filed a four-count complaint against the defendants.  In the complaint, Lyons identifies himself as an Illinois taxpayer and registered voter.  The BGA identifies itself as an Illinois not-for-profit citizen watchdog organization, with principal offices in Chicago, Illinois.

The complaint alleges that the Illinois Secretary of State's Office (SOS) was responsible for licensing truck and related commercial vehicle drivers for transportation of products within and from Illinois.  The SOS administered a written examination and road test for the issuance of commercial drivers licenses (CDLs).  The written test was allegedly prepared in the English language, thus requiring CDL applicants to demonstrate a basic understanding of  English to obtain a CDL.

The complaint alleged that defendant Ryan served as Illinois Secretary of State from 1990-98 and is presently Governor of the State of Illinois.  CFR was a "State Political Committee" as defined by statute (see 10 ILCS 5/9-1.8 (West 1998)) that solicited and accepted donations to Ryan's campaigns for Secretary of State and Governor.  Plaintiffs alleged that Fawell served as Assistant Secretary of State from 1990-93 and as Ryan's Chief of Staff from 1993-98, for which he was compensated by the State.  Plaintiffs also alleged that Fawell served as Campaign Manager for CFR during the relevant time period.  Plaintiffs alleged that:  Sniegowski allegedly served as a Metro Area Administrator for Ryan from 1992-98; Chamness served as Driver Services Director for Ryan from 1995-98; Chychula served as a Metro Division Zone Manager for Ryan from 1992-98; and each was compensated by the State in their respective positions.  Plaintiffs referred to Sniegowski, Chamness and Chychula as the "SOS defendants."

The complaint alleged that the SOS defendants combined and conspired with CFR and other unnamed co-conspirators to participate in a fraudulent and illegal political fundraising scheme which included:  (1) the issuance of CDLs to unqualified drivers in exchange for political donations; (2) pressuring SOS employees to sell CFR fundraiser tickets to entities regulated by the SOS during working hours, and providing said tickets to the employees during working hours at meetings held at SOS CDL facilities; (3) urging SOS employees to give purchasers of substan­tial numbers of such tickets to give associated CDL applicants passing grades on CDL tests; (4) encouraged and permitted SOS employees to accept fraudulent proof of Illinois domicile from large numbers of non-English speaking CDL applicants; (5) authorized SOS employees and unnamed co-conspirators to make arrangements with certain Illinois Department of Transporta­tion (IDOT) employees to solicit bribes from CDL applicants and accompany these applicants to SOS CDL facilities in IDOT vehicles to ensure "special treatment"; and unfairly disciplined and retaliated against SOS employees who resisted participating in the scheme or failed to sell their allotments of CFR fundraiser tickets.  The complaint further alleged that the SOS defendants and unnamed co-conspirators fraudulently concealed these activities through a number of methods, including the obstruction of investigations.

Count I of the complaint alleged that the SOS defendants had breached their fiduciary duties to the people of the State of Illinois and sought to impose a constructive trust upon all funds and benefits illegally obtained by CFR and the SOS defendants, including:  the salaries of the SOS defendants and unnamed co-conspirators; the value of IDOT vehicles used in the scheme; costs for re-testing CDL applicants; and the expenses of investigating the alleged wrongdoing.  Count II sought similar relief for alleged breaches of fiduciary duties by Fawell and other named State employees who engaged in the alleged scheme.

Count III of the complaint sought similar relief, alleging that Ryan breached his fiduciary duties by:  failing to stop the scheme; failing to launch an independent inquiry into the scheme after it was brought to his attention by the BGA and others; failing to discharge SOS employees involved in the scheme; curtailing investigations of the scheme, including closing the SOS Inspector general's office; and directing his secretary to contact an unnamed co-conspirator to issue CDLs to favored applicants.  Count III added further allegations of fraudulent concealment by Ryan and his representatives relating to press releases and statements made to the media.

Count IV of the complaint alleged that the defendants had violated sections 20-102 through 20-104 of the Illinois Code of Civil Procedure (735 ILCS 5/20-102, 20-103, 20-104 (West 1998)) (Code).
(footnote: 1)  Section 20-102 generally provides that any person who has received compensation, remuneration or benefits from the State or a governmental unit by means of false or fraudulent statements or records shall be answerable for the entire amount.  735 ILCS 5/20-102 (West 1998).  Section 20-103 generally provides that such a person will be liable not only to repay any such amount, but also for interest and penalties.  735 ILCS 5/20-103 (West 1998).  

Section 20-104(b) provides that a private citizen may bring a suit to recover the damages authorized by the prior sections on behalf of the affected governmental unit if:  the citizen sends a letter to the appropriate government official by certified mail, return receipt requested, stating an intention to file such an action; and the appropriate government official does not, within 60 days, institute the action, send notice to the citizen that the official has arranged for a settlement, or send notice stating an intent to commence suit within 60 days of the notice.  735 ILCS 5/20-104(b) (West 1998).  The appropriate government official's failure to actually settle or commence suit within the designated period also permits the citizen to sue.  735 ILCS 5/20-104(b) (West 1998).  The "appropriate government official" is the Attorney General, where the governmental unit allegedly damaged is the State.  735 ILCS 5/20-104(b) (West 1998).  Plaintiffs alleged that they were authorized to bring such an action pursuant to section 20-104 of the Code because the Attorney General of the State of Illinois had declined to initiate such an action in response to a letter sent by the BGA.
(footnote: 2)
 On March 21, 2000, plaintiffs sought to disqualify the firm of Altheimer & Grey as counsel for CFR, arguing that a conflict of interest was created where the firm and its members had previously been retained by the State of Illinois on various matters, some of which were related to the allegedly illegal issuance of the CDLs.  Following the submission of memoranda on the matter, the trial court denied the disqualification motion on April 18, 2000.
(footnote: 3)
 Shortly thereafter, the defendants moved to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2000)).  In their motions, the defendants argued that plaintiffs' claims were barred by the doctrines of 
res judicata
 and collateral estoppel by reason of the judgment entered by the Federal District Court for the Northern District of Illinois in 
Plotkin v. Ryan
, No. 99 C 53 (Sept. 28, 1999).
(footnote: 4)  The defendants also argued that plaintiffs' complaint was barred pursuant to section 2-619(a)(3) due to the pendency of the 
Plotkin
 suit.  The defendants further argued that plaintiffs lacked standing to bring the claims alleged in Counts I, II and III of their complaint on behalf of the State, and that the BGA lacked standing with respect to count IV.  The defendants argued that plaintiffs' claims were barred by the doctrine of sovereign immunity.  Finally, defendants claimed that count IV failed to state a claim for which relief could be granted.

On July 25, 2000, following the submission of memoranda and argument on the matter, the trial court granted the defendants' motions to dismiss.  The trial court ruled that:  (1) plaintiffs' claims were barred under section 2-619(a)(3), due to the pendency of the 
Plotkin
 suit; (2) plain­tiffs lacked standing with respect to Counts I, II and III of their complaint; and (3) the claims for relief stated in count IV of the complaint were not recoverable under the Act.  Plaintiffs now appeal.

I

Section 2-619.1 of the Code allows a party to combine motions to dismiss based on sections 2-615 and 2-619 of the Code.  735 ILCS 5/2-619.1 (West 2000).  A section 2-615 motion admits all well-pleaded facts and attacks the legal sufficiency of the complaint; a section 2-619 motion admits the legal sufficiency of the complaint, but raises defects, defenses or other affirmative matter appearing on the face of the complaint or established by external submissions which defeat the action.  
Joseph v. Chicago Transit Authority
, 306 Ill. App. 3d 927, 930, 715 N.E.2d 733, 736 (1999).  Lack of standing may be raised under section 2-619.  
Glisson v. City of Marion
, 188 Ill.2d 211, 220, 720 N.E.2d 1034, 1039 (1999).  Generally, dismissals under either section are reviewed 
de novo
.  
R-Five, Inc. v. Shadeco, Inc.
, 305 Ill. App. 3d 635, 639, 712 N.E.2d 913, 915 (1999).  This court may affirm a correct dismissal for any reason appearing in the record.  
Nielsen-Massey Vanillas, Inc. v. City of Waukegan
, 276 Ill. App. 3d 146, 151, 657 N.E.2d 1201, 1205 (1995).

II

Plaintiffs first contend that the trial court erred in dismissing Counts I, II and III of their complaint on the ground that they lacked standing to sue for the imposition of constructive trusts based on public officials' alleged breaches of their fiduciary duties.  Defendants argue that the plaintiffs cannot sue on behalf of the State of Illinois, noting that under both the 1870 and 1970 state constitutions, that the Attorney General is the State's only legal representative in the courts.  
Environmental Protection Agency v. Pollution Control Bd.
, 69 Ill. 2d 394, 398, 372 N.E.2d 50, 51 (1977); 
Fergus v. Russel
, 270 Ill. 304, 337, 110 N.E. 130, 143 (1915).
(footnote: 5)  The Attorney General's duties are prescribed by law and include those powers traditionally held by the Attorney General at common law; generally, neither the legislature nor the judiciary may deprive the Attorney General of his inherent powers under the Illinois Constitution to direct the legal affairs of the State.  
Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority
, 98 Ill. 2d 58, 67, 456 N.E.2d 50, 55 (1983); 
Environmental Protection Agency
, 69 Ill. 2d at 399, 372 N.E.2d at 52.  For example, in 
Stein v. Howlett
, 52 Ill. 2d 570, 587, 289 N.E.2d 409, 418 (1972), the supreme court struck down portions of the Illinois Governmental Ethics Act that purported to authorize the Secretary of State to render advisory opinions on questions concerning the interpretation of the statute and to hire legal counsel for such purposes.  The 
Environmental Protection Agency
 decision held that the Pollution Control Board could not appoint private counsel to represent it, stating that"[t]o allow the numerous State agencies the liberty to employ private counsel without the approval of the Attorney General would be to invite chaos into the area of legal representation of the State."  
Environmental Protection Agency
, 69 Ill. 2d at 402, 372 N.E.2d at 53.
(footnote: 6)
 In 
Fuchs v. Bidwill
, 65 Ill. 2d 503, 359 N.E.2d 158 (1976), state taxpayers filed a suit against members and leaders of the Illinois General Assembly who allegedly purchased racetrack stock at a deflated price and made large profits upon resale.  This advantageous purchase was allegedly in payment for influencing favorable legislation affecting the operations and profitability of thoroughbred and harness racing in Illinois. The plaintiffs claimed that the defendants had breached their fiduciary duty to the public and sought an accounting, declarations of constructive trusts and other equitable relief.  
Fuchs
, 65 Ill. 2d at 505-08, 359 N.E.2d at 159-61.

The defendants in 
Fuchs
 argued that the plaintiffs lacked standing because permitting plaintiffs to sue would be an unconstitutional usurpation of the power of the Attorney General.  
Fuchs
, 65 Ill. 2d at 508-09, 359 N.E.2d at 161.  The supreme court noted that the taxpayer cases cited in support of standing all involved "unquestionably public" funds or property alleged to be misappropriated, misapplied or wrongfully retained.  
Fuchs
, 65 Ill. 2d at 509, 359 N.E.2d at 161.  The supreme court also noted that in the cases in which an equitable accounting was ordered or a constructive trust imposed, the action was brought by the political entity whose property or money was involved.  
Fuchs
, 65 Ill. 2d at 509, 359 N.E.2d at 161.  The 
Fuchs
 court, while stating that the alleged conduct  was deplorable, ruled that the taxpayers lacked standing to sue, on the ground that under our state constitution, it is left to the Attorney General to enforce the statutes regulating lobbying, campaign contributions, and governmental ethics.  
Fuchs
, 65 Ill. 2d at 509-10, 359 N.E.2d at 162.
(footnote: 7)
 Plaintiffs argue that 
Fuchs
 does not bar taxpayer standing in this case.
(footnote: 8)  Plaintiffs argue in their brief that the holding in 
Fuchs
 "was limited to whether a taxpayer had standing to seek the imposition of a constructive trust on private profits and had nothing to do with public funds."  Plaintiffs heavily rely on 
City of Chicago ex rel. Cohen v. Keane
, 64 Ill. 2d 559, 357 N.E.2d 452 (1976), in which Cohen sued on behalf of the City of Chicago, seeking an accounting from Keane and others for all profits made by them through an alleged scheme to defraud the City and its citizens.  Keane, a city alderman, allegedly took advantage of his office to purchase at scavenger tax sales properties which were to be designated as urban renewal sites, used his government position to clear liens on the properties, then profited upon their sale to the city or other entities.  
Cohen
, 64 Ill. 2d at 561-62, 357 N.E.2d at 454.  The supreme court held that the plaintiff had standing to sue, rejecting the argument that any sums that might be recovered were not, when the action was filed, "money or property belonging to the municipality" within the meaning of the statute governing such suits, because the equitable principles undergirding the taxpayer suit cannot be so confined.  
Cohen
, 64 Ill. 2d at 568-69, 357 N.E.2d at 457.

Plaintiffs claim that 
Fuchs
 is inconsistent with 
Cohen
. Indeed, plaintiffs note that then-Attorney General Scott so argued in a supplemental 
amicus curiae
 brief in support of the petition for rehearing filed in 
Fuchs
 and attached a copy of said brief as an appendix to their reply brief.  Although it is not a proper part of the record on appeal, a well-reasoned opinion of the Attorney General is entitled to considerable weight, especially in a matter of first impression in Illinois; however,  it is not binding on the courts.  See 
Bonaguro v. County Officers Electoral Bd.
, 158 Ill. 2d 391, 399, 634 N.E.2d 712, 715 (1994).  Moreover, the supreme court did not modify its opinion
 in response to that argument when it denied rehearing in 
Fuchs
.

It is true that 
Cohen
 held that a taxpayer had standing to sue for profits made by a public official in breach of his fiduciary duty, whereas 
Fuchs
 held that the taxpayer lacked standing to sue for profits made by public officials in an alleged breach of their fiduciary duties.  It does not necessarily follow, however, that 
Fuchs
 is inconsistent with 
Cohen
.  It is equally valid to conclude that what primarily distinguishes 
Fuchs
 from 
Cohen
 is not whether various funds are deemed public funds, but that 
Fuchs
 involved state taxpayer standing to seek an equitable accounting and constructive trust, whereas 
Cohen
 did not.
(footnote: 9)  It is true that a decision as to standing may differ depending on the issue involved and the nature of the relief sought.  
Martini v. Netsch
, 272 Ill. App. 3d 693, 695, 650 N.E.2d 668, 670 (1995).  But it is equally true that standing is primarily an issue of whether a particular plaintiff, acting in an individual or representative capacity, may properly litigate a dispute or issue.  
In re Estate of Wellman
, 174 Ill. 2d at 345, 673 N.E.2d at 276.  Thus, it should not be surprising that in determining issues of standing, the nature of the plaintiff is as important as the nature of the relief the plaintiff requests.

Plaintiffs contend that 
Fuchs
 is also inconsistent with 
Fergus
, in which our supreme court recognized state taxpayer standing to sue to prevent the misappropriation of public funds.  
Fergus
, 270 Ill. at 314-18, 110 N.E.2d at 135-36.  Plaintiffs argue that under the "public trust" doctrine, a taxpayer's equitable interest in the public fisc or property which is being allegedly ille­gally disposed of confers standing to sue.  See 
Paepcke v. Public Bldg. Commission of Chicago
, 46 Ill. 2d 330, 341, 263 N.E.2d 11, 18 (1970).  The argument that 
Fuchs
 conflicts with 
Fergus
 also was made by then-Attorney General Scott in his brief supporting the petition for rehearing filed in 
Fuchs
.  Plaintiff's argument based on 
Paepke
 appears in the dissent in 
Fuchs
.  
Fuchs
, 65 Ill. 2d at 511-12, 359 N.E.2d at 162-63 (Schaefer, J., dissenting).  The 
Fuchs
 court apparently was unpersuaded by these arguments, as it denied rehearing without modifying its opinion.

Indeed, 
Fuchs
 cites 
Fergus
 to support the conclusion that the Attorney General is the only officer empowered to represent the State in litigation in which it is the real party in interest.  
Fuchs
, 65 Ill. 2d at 510, 359 N.E.2d at 162.  
Fuchs
 also cites 
People ex rel. Scott v. Briceland
, 65 Ill. 2d 485, 501-02, 359 N.E.2d 149, 151 (1976), which held a section of the Environmental Protection Act unconstitutional to the extent that it authorized the institution and prosecution of proceedings before the Pollution Control Board by an officer other than the Attorney General.  
Briceland
, 65 Ill. 2d at 501-02, 359 N.E.2d at 151.  The 
Fuchs
 court's express reliance on 
Briceland
 contradicts plaintiffs' perfunctory dismissal (in a footnote of their reply brief) of 
Briceland
, 
Gust K. Newberg, Inc.
, 
Environmental Protection Agency
, and 
Stein
 as "inapplicable to this case because they do not address the issue of state taxpayer standing."

Furthermore, contrary to plaintiffs' arguments, 
Fuchs
 is not an anomalous decision in Illinois case law involving citizen and taxpayer lawsuits.  In 
People ex rel. Kunstman v. Shinsaku Nagano
, 389 Ill. 231, 59 N.E.2d 96 (1945), a citizen brought a suit for the forfeiture of an alien's real estate.  The citizen's standing to bring the action was questioned; the supreme court held that because of the State's interest in the subject of the litigation, the citizen had no right to sue, adding that such a suit could not be brought by anyone except the State's Attorney.  
Kunstman
, 389 Ill. at 251, 59 N.E.2d at 105.  The 
Kunstman
 court also held that the statute purporting to confer citizen standing was unconstitutional, even though it purported to confer standing only after the State's Attorney failed to act within 30 days of receiving notice that an alien was holding title to lands in Illinois contrary to law.  
Kunstman
, 389 Ill. at 251, 59 N.E.2d at 105.  The supreme court noted that it had "always viewed a State's Attorney as a constitutional officer with rights and duties analogous to or largely coincident with the Attorney General, though not identical, and the one to represent the county or People in matters affected with a public interest."  
Kunstman
, 389 Ill. at 249, 59 N.E.2d at 104.

In 
People ex rel. Morse v. Chambliss
, 399 Ill. 151, 77 N.E.2d 191 (1948), Morse brought a taxpayer suit seeking an accounting of the taxes, interest, penalties and costs due upon property of Chambliss, and foreclosure of the tax lien upon said property if the amount found due was not paid.  The supreme court rejected the argument that the suit was one to recover taxes misappro­priated or misapplied, concluding that the suit sought the collection of unpaid taxes.  
Morse
, 399 Ill. at 158, 77 N.E.2d at 195.  The supreme court held that the county board or other authorized taxing body must direct the bringing of such a suit and that the State's Attorney was the only proper person to bring such a suit.  
Morse
, 399 Ill. at 157, 77 N.E.2d at 194. 

Kunstman
 and 
Morse
 involved the constitutional prerogatives of a State's Attorney.  However, the supreme court views a State's Attorney as a constitutional officer with rights and duties analogous to those of the Attorney General.  See 
Kunstman
, 389 Ill. at 249, 59 N.E.2d at 104.  The cases cited by the defendants, such as 
Briceland
 and the 
Environmental Protection Agency
 case, further demonstrate that the same constitutional concerns exist with respect to the Attorney General.  Viewed in this historical context, 
Fuchs
 merely represents an application of settled case law regarding state citizen or taxpayer standing, rather than a radical restriction of the public trust doctrine.  Indeed, the 
Morse
 court's requirement that the county board or other authorized taxing body must direct the bringing of a suit to collect unpaid taxes parallels the 
Fuchs
 court's observation that prior actions seeking an equitable accounting or a constructive trust were brought by the political entity whose property or money was ostensibly involved.  See 
Fuchs
, 65 Ill. 2d at 509, 359 N.E.2d at 161.

In sum, plaintiffs are not bringing the traditional type of state taxpayer action approved in 
Fergus
.
(footnote: 10)  Instead, plaintiffs' complaint resembles the type of action disapproved in 
Fuchs
, 
Kunst­man
 and 
Morse
.  Thus, the trial court did not err in dismissing Counts I, II & III of the complaint. 

The same reasoning applies to the trial court's dismissal of count IV of plaintiffs' complaint.  As noted above, count IV of the complaint was based on section 20-104(b) of the Code, which provides in part that a private citizen may bring a suit to recover damages from persons who have defrauded the State after notice to the Attorney General, if the Attorney General fails to take certain actions within 60 days.  735 ILCS 5/20-104(b) (West 1998).
(footnote: 11)  Our supreme court has stated that neither the legislature nor the judiciary may deprive the Attorney General of his or her inherent powers under the Constitution to direct the legal affairs of the State.  
E.g.
, 
Gust K. Newberg, Inc
, 98 Ill. 2d at 67, 456 N.E.2d at 55.  Our supreme court struck down as unconstitutional a statute that similarly purported to confer standing on citizens in derogation of the powers of a State's Attorney because that office was viewed as similar to that of the Attor­ney General.  
Kunstman
, 389 Ill. at 249, 59 N.E.2d at 104.  Our supreme court has consistently stated that the public interest is not served by allowing certain government agencies or private persons to assume the inherent powers of the Attorney General.  See, 
e.g.
,  
Environmental Protec­tion Agency
, 69 Ill. 2d at 402, 372 N.E.2d at 53; 
Fuchs
, 65 Ill. 2d at 509-10, 359 N.E.2d at 162.

Accordingly, this court must conclude that section 20-104(b) of the Code, no matter how well-intentioned,  is unconstitutional to the extent that it purports to confer standing on private citizens to sue in cases where the State is the real party in interest.  Thus, plaintiffs also lack standing to proceed on count IV of their complaint.  The trial court did not err in dismissing it.

Similarly, plaintiffs also lack standing to move to disqualify the firm of Altheimer & Grey as counsel for CFR based on an alleged conflict of interest.  See 
Schwartz v. Cortelloni
, 177 Ill. 2d 166, 174, 685 N.E.2d 871, 875 (1997).  Plaintiffs claim standing in their reply brief on the ground that they "stand in the shoes of the Attorney General in the prosecution of this action ***."  One of the cases plaintiffs cite in support of standing to bring a disqualification motion (all of which are federal cases involving the federal False Claims Act) states that the 
qui tam
 plaintiff "is essentially a self-appointed private attorney general ***."  
United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center
, 961 F.2d 46, 49 (4th Cir. 1992).  Even assuming 
arguendo
 that this is a correct statement of federal law, it is clear under Illinois law that a state taxpayer generally cannot stand in the shoes of the Attorney General.

Given plaintiffs' lack of standing, this court will not pass upon their remaining arguments.
(footnote: 12)
 We note in closing, as did the Seventh Circuit in dismissing the 
Plotkin
 litigation, that the BGA in the past has been instrumental in advancing government reforms in Illinois by using journalistic techniques and litigation to expose corruption.  However, this court cannot ignore decades of supreme court cases interpreting our state constitution in the name of good government.

For all of the aforementioned reasons, the orders of the circuit court of Cook County are affirmed.

Affirmed.

BUCKLEY, J., and O'BRIEN, J., concur.

FOOTNOTES
1:  The parties refer to Article XX of the Code by various names, including the Illinois Fraudulently Obtained Public Funds Act and the Illinois Recovery Act, though Article XX has no official short title.

2:  Plaintiffs state in their brief that the Attorney General "sanctioned" the initiation of this lawsuit and "permitted" them to move forward in his stead.  Plaintiffs state in their reply brief that they are not forcing the State to act against its will because the Attorney General "sanctioned" this action.  Plaintiffs fail to identify where such sanction or permission appears in the record on appeal.  Plaintiffs attached a copy of a letter from the Office of the Attorney General, signed by a Deputy Attorney General for Civil Litigation, as part of the appendix to their brief, but such attachments are not properly considered as part of the record on appeal.  
E.g.
, 
Carroll v. Faust
, 311 Ill. App. 3d 679, 683-84, 725 N.E.2d 764, 768 (2000).  

Plaintiffs also fail to provide any argument, much less legal authority for the proposition that a Deputy Attorney General for Civil Litigation has the power to sanction or permit private parties to act for the Attorney General.  Moreover, a review of the letter attached to plaintiffs' brief reveals no language showing such sanction or permission.  However, it must be noted that Article XX of the Code does not require that the Attorney General sanction or permit suit by a private citizen.

3:  Fawell and Chamness assert that plaintiffs also filed 
Lyons v. Ryan II
, 00 CH 6030, against defendant Ryan in the circuit court of Cook County to contest the validity of the Attorney General's appointment of counsel to represent individual defendants in this lawsuit.  Fawell and Chamness state that plaintiffs voluntarily dismissed the action pending the outcome of this appeal.

4:  The record shows that the 
Plotkin
 litigation was brought by a resident and registered voter who voted for Ryan's opponent in the 1998 election; the BGA sued both on behalf of its member Illinois voters and in its own right, based on the time and money it spent investigating the defendants' alleged illegal conduct.  The complaint's factual allegations relate to the illegal issuance of CDL's and Ryan's failure to remedy the situation.  The 
Plotkin
 complaint was comprised of 4 counts, generally alleging that:  (1) Ryan and John Doe defendants, acting under color of state law, violated plaintiffs' rights under the first amendment to the U.S. Constitution, as protected by 42 U.S.C. § 1983 (1988); (2) Ryan and John Doe defendants, acting under color of state law, violated plaintiffs' rights under the fourteenth amendment to the U.S. Constitution, as protected by 42 U.S.C. § 1983 (1988); (3) Ryan and John Doe defendants imposed political conditions on governmental employment and coerced political contributions from government employees in violation of the 
Shakman
 decree (see 
Shakman v. Democratic Organination of Cook County
, 481 F. Supp. 1315, 1356-59 (N.D. Ill. 1979)); and (4) CFR knowingly received funds obtained in violation of law that in equity should not be allowed to be retained.

The United States District Court for the Northern District of Illinois entered a memorandum opinion and order dismissing 
Plotkin
 for lack of standing on September 28, 1999.  On July 25, 2000, when the trial court in this case granted defendants' motion to dismiss, it was undisputed that the 
Plotkin
 plaintiffs had appealed the dismissal of the federal suit.  While the trial court's order was pending on appeal to this court, the United States Court of Appeals for the Seventh Circuit entered an order on February 28, 2001, affirming the dismissal of the federal action on the ground that the 
Plotkin
 plaintiffs lacked standing to sue in federal court.  Copies of both federal court orders have been submitted to this court.  Upon inquiry during oral argument, plaintiffs' counsel represented that the 
Plotkin
 plaintiffs had not sought further appellate review.

It is worth noting that the Seventh Circuit's decision mentioned an ongoing federal criminal investigation into the alleged fraudulent issuance of CDLs, commonly referred to as "Operation Safe Road."  The Seventh Circuit's decision also cited contemporary media accounts stating that at least 35 people, including 18 state employees, already had been convicted in the course of the investigation.  The record on appeal in this case also contains references to and documents relating to the investigation.  However, defendants have not cited the ongoing federal investigation as a reason to dismiss the complaint in this case.

5:  The trial court dismissed the entire complaint pursuant to section 2-619(a)(3) of the Code and also dismissed count IV pursuant to section 2-615 of the Code, perhaps to avoid ruling on the constitutional issues in this case.  A court generally should avoid constitutional issues, unless addressing them is necessary to the disposition of a case.  See, 
e.g.
, 
East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School Dist. No. 189 Financial Oversight Panel
, 178 Ill. 2d 399, 408, 687 N.E.2d 1050, 1056-57 (1997).  However, a court 
must
 address constitutional issues that affect its jurisdiction or the legitimacy of the judicial proceedings themselves.  
In re Contest of Election for Offices of Governor and Lieutenant Governor Held at General Election on November 2, 1982
, 93 Ill. 2d 463, 471, 444 N.E.2d 170, 173 (1983) (striking down, 
sua sponte
, election contest statutes that violated the separation of powers in our state constitution).

The standing issue here is both jurisdictional and constitutional in nature.  This court, in ruling that a party has waived the issue of standing, has occasionally stated that standing is not jurisdictional, but is an affirmative defense.  
E.g.
, 
Contract Development Corp. v. Beck
, 255 Ill. App. 3d 660, 664, 627 N.E.2d 760, 764 (1994) (citation omitted).  However, the fact that standing is an affirmative defense under section 2-619 does not preclude it from being jurisdictional.  After all, lack of subject matter jurisdiction is a ground for dismissal under section 2-619.  735 ILCS 5/2-619(a)(1) (West 1998).

Nevertheless, the ruling in 
Beck
 (and similar cases) that standing can be waived is correct.  Parties cannot waive an issue of subject matter jurisdiction.  
Segers v. Industrial Com'n
, 191 Ill. 2d 421, 427, 732 N.E.2d 488, 492 (2000).  However, other jurisdictional issues can be waived.  
Segers
, 191 Ill. 2d at 427, 732 N.E.2d at 492 (primary jurisdiction);  
Volkmar v. State Farm Mutual Automobile Ins. Co.
, 104 Ill. App. 3d 149, 151, 432 N.E.2d 1149, 1151 (1982) (personal jurisdiction).  Standing is one such issue.  
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 494, 524 N.E.2d 561, 575 (1988).  Presumably, this is because the essence of the standing inquiry is not the subject matter 
per se
, but whether a litigant, either in an individual or representative capacity, is entitled to have the court decide the merits of a particular dispute or issue.  See 
In re Estate of Wellman
, 174 Ill. 2d 335, 345, 673 N.E.2d 272, 276 (1996).

6:  However, it appears that the general rule is not without exception.  The 
Environmental Protection Agency
 court stated that this court had the discretion to appoint or deny appointment of counsel when the Attorney General is sick or absent, or unable to attend, or is interested in any cause or proceeding that he or she has a duty to prosecute or defend, pursuant to section 6 of "An Act in regard to attorneys general and State's attorneys."  
Environmental Protection Agency
, 69 Ill. 2d at 400, 372 N.E.2d at 52.  The supreme court narrowly interpreted the term "interested" to refer only to cases where the Attorney General is interested as a private individual or an actual party to the action.  
Environmental Protection Agency
, 69 Ill. 2d at 400-01, 372 N.E.2d at 52.

7:  It is worth noting that the 
Fuchs
 court, having proceeded directly to the standing issue and determined that the plaintiffs lacked standing, declined to consider the other contentions made by the parties on appeal.  
Fuchs
, 65 Ill. 2d at 510, 359 N.E.2d at 162.

8:  Plaintiffs also argue that 
Fuchs
 was wrongly decided, but this court has no authority to overrule the supreme court or to modify its decisions.  
Rickey v. Chicago Transit Authority
, 98 Ill. 2d 546, 551, 457 N.E.2d 1, 3 (1983).

9:  Indeed, as in 
Fuchs
, the plaintiffs here rely on cases involving traditional taxpayer suits (
e.g.
,  
Feen v. Ray
, 109 Ill. 2d 339, 487 N.E.2d 619 (1985); 
Fergus
, 270 Ill. at 314-18, 110 N.E.2d at 135-36.) and cases in which a governmental entity or officer sues for an equitable accounting or constructive trust (
e.g.
, 
People ex rel. Daley v. Warren Motors, Inc.
, 114 Ill. 2d 305, 500 N.E.2d 22 (1986); 
Cohen
, 64 Ill. 2d at 559, 357 N.E.2d at 452).

10:  This court notes in passing that such suits are governed by sections 11-301 and 11-303 of the Code.  735 ILCS 5/11-301, 11-303 (West 1998).

11:  To date, there have been two reported decisions involving Article XX of the Code: 
People ex rel. Ulrich v. Bosmann
, 279 Ill. App. 3d 36, 664 N.E.2d 119 (1996), and 
Ryan v. Cosentino
, 793 F. Supp. 822 (N.D. Ill. 1992).  However, neither 
Ulrich
 nor 
Cosentino
 raised the standing issue raised by the defendants here.  Plaintiffs also cite unreported decisions of the court in 
Cosentino
, but provides no support for the proposition that it is proper to cite unrelated, unreported federal court orders as any kind of authority before an Illinois court.

12:  The trial court also dismissed the entire complaint under section 2-619(a)(3) of the Code, which provides for dismissal when "there is another action pending between the same parties for the same cause."  735 ILCS 5/2-619(a)(3) (West 1998).  We note in passing that the possibility that a federal court might dismiss a pending suit for lack of jurisdiction is not a bar to the trial court's discretion in entering a section 2-619(a)(3) dismissal.  See 
International Games, Inc. v. Sims
, 111 Ill. App. 3d 922, 927, 444 N.E.2d 736, 739 (1982) (discussing the predecessor statute to section 2-619(a)(3)).  

In defining whether the parties are the same, the parties need not be identical; in defining whether two actions are for the same cause, the inquiry is whether they arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof or relief sought differ.  See, 
e.g.
, 
Kapoor v. Fujisawa Pharmaceutical Co.
, 298 Ill. App. 3d 780, 789, 699 N.E.2d 1095, 1102 (1998).  The BGA was a plaintiff in 
Plotkin
 and, assuming the allegations in this case to be true, could have asserted taxpayer standing in 
Plotkin
.  The two actions both arise out of the fraudulent issuance of CDLs by Secretary of State employees and the alleged failure of Ryan to remedy the situation.  Count IV of the 
Plotkin
 complaint, which alleged that CFR was unjustly enriched, appears to be a state law claim sounding in equity.  Indeed, the 
Plotkin
 complaint asserted 28 U.S.C. § 1367 (1998), which addresses supplemental jurisdiction over closely related state law claims, as a basis for federal jurisdiction.

However, a reviewing court generally will not issue advisory opinions merely to set precedent or guide future litigation.  
Segers
, 191 Ill. 2d at 428, 732 N.E.2d at 493.  Accordingly, this court does not reach any final conclusion on the section 2-619(a)(3) issues, given the plaintiffs' lack of standing.  See, 
e.g.
, 
Harris Trust & Savings Bank v. Duggan
, 95 Ill. 2d 516, 527, 449 N.E.2d 69, 74 (1983).